WILL MOSELEY v. THE STATE.

*No. 1332.   Decided November 18th, 1896.*

*Motion for Rehearing Decided December 16th, 1896.*

### 1.  Receiving Stolen Property—Proof.

Under an indictment alleging that the stolen property was received from a certain
person, the proof must sustain the allegation as to that particular person. Proof
that the property was so received from some other person would not sustain the in-
dictment.

### 2.  Same—Evidence Sufficient.

See, facts stated in the opinion, Held: To be amply sufficient to support a convic-
tion for receiving stolen property knowing it to have been stolen, as charged in the
indictment.

### 3.  Accomplice Testimony—Charge Upon Not Necessary When.

A charge of court upon the law of accomplice testimony, is not required in cases
where the accomplice witness does not testify to any fact connecting the defendant
with the transaction, nor to any fact which assisted the State in making out the
case.

ON MOTION FOR REHEARING.

### 4.  Receiving in One County Property Stolen in Another—Venue of Prose-
cution.

By Art. 237, Code Crim. Proc., it is provided, that the offense of "receiving and
concealing stolen property," may be prosecuted in the county where the theft was
committed, or in any other county through, or into which, the property may have
been carried by the person stealing the same; or in any county where the same may
have been received or concealed by the offender. Held: That one who receives a
stolen horse in one county, with knowledge of the theft of such horse, and which
horse had been carried into another county, may be prosecuted in the latter county,
though he did not receive the horse in such county.

**5.  Same—Jurisdiction.**

  Where property is received, and the receiver knowing it to have been stolen, in one county, and it is carried by the receiver into another county, either county would have jurisdiction of the offense.  Property can be concealed by carrying it off.

**6.  Contemporaneous Thefts—Charge Limiting and Restricting.**

  The court is only required, in the charge, to limit and restrict evidence of contemporaneous thefts where the character of the property thus taken is such that the jury might convict for such contemporaneous crime.

  APPEAL from the District Court of McLennan.   Tried below before Hon. SAMUEL R. SCOTT.

  Appeal from a conviction for receiving a stolen horse; penalty, five years' imprisonment in the penitentiary.

  The opinion states the case.

  *Cunningham & Cunningham,* for appellant.

  *Mann Trice,* Assistant Attorney-General, for the State.

  [No brief found with the record.]

  DAVIDSON, JUDGE.—Conviction for receiving a stolen horse, knowing the same to have been stolen, the property of W. E. Roberts.   The indictment alleges that Sam Adams and Will Moseley received the property from Sam Stanfield.   Under this allegation the State must prove, in order to sustain the conviction, that appellant received the property from Sam Stanfield.   Proof that he received it from some other person would not be sufficient to sustain the indictment.   The court submitted to the jury all of the issues presented by the evidence fully and very clearly.   The only question for us to decide is whether the testimony sustains the allegation that appellant, alone or acting with Adams, received the horse from Sam Stanfield.   Appellant's theory was that he purchased the horse from Sonny Moseley.   This defense was fully submitted to the jury in the main charge of the court.   The record shows that Sam Stanfield stole the horse at Mt. Calm, and carried it to Polk Moseley's place in McLennan County.   This theft was committed at night, and the horse was carried there the same night.   The next morning Sonny Moseley came to Polk Moseley's, reaching there about the time or just after the family had gotten up.   Stanfield, Will Moseley, Sam Adams, and Sonny Moseley all went to the lot where the horse was, and had a long private conversation among themselves.   They talked in low and earnest tones.   The subject of the conversation was the Roberts horse, the one that Stanfield had stolen and brought there during the previous night.   After this conversation was finished Sam Stanfield got on a brown horse and left, going in the direction of his home, near Mt. Calm, leaving the stolen property at Polk Moseley's.   The defendant left that afternoon, on a bay or brown horse, going to Pryor Stripling's.   About two or three days later, Sonny Moseley and Sam Adams carried the stolen horse to Doc Stone's, in the upper part of Falls County.   Upon their arrival at Doc Stone's, they left the horse in Stone's lot, and went off seven or eight miles, to where defendant

was, and returned with him to Doc Stone's.    After the three arrived at the residence of said Stone, the defendant remained a short time, and left the horse he had ridden there, and rode away on the stolen horse. Shortly afterwards the defendant carried him into Lampasas County and sold him.    The proof shows that appellant knew the horse well, and knew that it was the property of Roberts.    He evidently knew the prop-- erty was stolen, and knew this when he saw the horse at Polk Moseley's. Now, the question is whether these facts support the allegation that the horse was received from Sam Stanfield.    It is a remarkable fact that Sonny Moseley and Sam Adams should have carried the horse to Doc. Stone's, some seven or eight miles from where appellant was, seek him out and bring him to Doc Stone's, in order to sell a horse to him, which he knew was stolen property.    We are impressed with, and perfectly satisfied of, the fact that, in that previous and earnest conversation at. Polk Moseley's this whole matter was arranged, and that it was there agreed among the parties that the horse was to be taken from Polk Moseley's to Doc Stone's, and there received by the defendant, and car-- ried off, and sold.    These parties were acting together, and, when de- fendant, Sonny Moseley, and Sam Adams received the property at Polk Moseley's the appellant was guilty of that reception, because it was a. part of the conspiracy, and he was present when the horse was received. Thus, the offense was completed.    This pretended sale was a subter-- fuge—a part of the conspiracy to receive and conceal.    We are of the opinion that the evidence supports the conviction, and that the appel- lant did receive the horse from Stanfield.    The State introduced as a witness, Sam Adams, a codefendant.    Appellant objected to the charge of the court, because it did not tell the jury that they could not convict. upon the unsupported testimony of an accomplice.    This is a correct. proposition.    It is also true that Adams was an accomplice, but he tes- tified to no fact tending to connect this defendant with the transaction, nor to any fact which assisted in making out the State's case.    The statute provides that you cannot convict upon the testimony of an ac- complice, etc.    This conviction was not upon the testimony of an ac- complice, nor was the State aided by the testimony of an accomplice in procuring this conviction.    It is an undisputed fact that the horse was at Polk Moseley's place.    The above views settle the question as to whether appellant received the horse in McLennan County.    If he had not received the horse in McLennan County, evidently he carried the property into that county.    The judgment is affirmed.

*Affirmed.*

ON MOTION FOR REHEARING.

DAVIDSON, JUDGE.—Appellant, in his motion for a rehearing, complains of that portion of the opinion in which it was stated that "it is an undisputed fact that the horse was at Polk Moseley's place."    His contention is that there is no evidence in the record showing that the horse was ever at Polk Moseley's place.    We are still of the opinion, after

reviewing the facts, that Sam Stanfield committed the theft of the horse at Mt. Calm, on the night of the 10th of November, and on the same night rode the horse from twelve to fourteen miles, to Polk Moseley's residence, in McLennan County, and there left it, riding a brown horse off the next morning.   The testimony further shows that appellant, Sonny Moseley, Sam Adams, Jr., and Sam Adams, Sr., and other parties were there.   Early the next morning, probably by or before the sun rose, defendant, Sam Stanfield, Sonny Moseley, and Sam Adams, Jr., were in a close and earnest conversation with reference to the Roberts horse at the lot of Polk Moseley, in McLennan County.   Directly after this conversation, Sam Stanfield left, going in the direction of his home, riding a brown horse, and later defendant left, going in a westerly direction, across the Brazos River to Stripling's, which was in McLennan County.   Two or three days later Sonny Moseley and Sam Adams, Jr., drove the horse down into Falls County, to Doc Stone's, where they left him, went into McLennan County, secured the defendant, and took him to Stone's, and delivered him the horse in question.   He then rode him into McLennan County, and thence west to Lampasas, and there disposed of him.   We still hold that there is no testimony in the record controverting the fact that the stolen horse was at Polk Moseley's, in McLennan County, taken there by Sam Stanfield.   The fact that the defendant testified that he secured the horse at Doc Stone's, in Falls County, is no attack on the testimony indicating and showing the horse to have been previously at Polk Moseley's.   If the thief carried the horse to Polk Moseley's, he living in McLennan County, this would give McLennan County jurisdiction to try appellant for receiving the horse, without reference to whether he received it in McLennan or any other county.   See, Art. 237, Code Crim. Proc., 1895.   We are not to be understood as holding that, where a person receives property knowing it to have been stolen, and carries it into another county, either county would not have jurisdiction.   Property can be concealed by carrying it off.   Appellant also complains that the trial court erred in failing to restrict to its legitimate purpose the testimony introduced on the trial, that the saddle and bridle taken with the stolen horse, and which were on the horse at the time he was taken, could only be used for the purpose of establishing the identity, in developing the res gestæ of the offense, to show the connection of defendant therewith, or the intent with which he acted in regard to the horse.   It has been held that with reference to this character of cases the charge should usually be given, but it is not absolutely necessary to be given, unless the character of the property stolen contemporaneous with the theft charged is such that the jury might convict for that offense.   But there is no danger of a conviction for stealing a saddle and bridle under a charge of theft of a horse, or receiving said horse after it was stolen. See, Leeper v. State, 29 Tex. Crim. App., 63; McKinney v. State, 8 Tex. Crim. App., 626.   The motion for a rehearing is overruled.

*Motion Overruled.*