# MARCH, 1912.

### OLVEY MOORE v. THE STATE.

No. 1383.   Decided February 7, 1912.

Rehearing denied March 6, 1912.

**1.—Perjury—Bills of Exceptions—Record.**

Attorneys and clerks should take more care in the preparation of records, if they expect the Appellate Court to give the matters that careful and thoughtful review that should be given each case.

**2.—Same—Witness—Bias—Evidence.**

Upon trial of perjury, there was no error in showing the interest, bias, and state of feeling of a witness towards the defendant.

**3.—Same—Evidence—Acts of Defendant.**

Where the witness had testified fully in regard to defendant's drinking, there was no error in sustaining an objection to the question as to whether defendant was sober enough to know what was going on.

**4.—Same—Evidence—Leading Questions.**

Where, upon trial of perjury, the witness was hostile to the State and friendly to the defendant, there was no error in permitting the State to ask leading questions.

**5.—Same—Evidence—Bill of Exceptions.**

Where it is not shown in the bill of exceptions that any answer was made by the witness to the questions whether he was shooting dice, etc., and no ground of objections stated, the same could not be reviewed.

**6.—Same—Evidence—Bill of Exceptions.**

Where, upon cross-examination, defendant's counsel endeavored to make the witness admit that he was drunk while the alleged game was played, there was no error in permitting the State's question whether the witness was so drunk that he did not know there was a game; besides, the bill of exceptions was defective.

**7.—Same—Evidence—Bill of Exceptions.**

Where the bill of exceptions did not show about whom the questions were being asked as to betting at a game in matters that occurred before the grand jury, the same could not be considered; besides, as qualified by the court, there was no error.

**8.—Same—Evidence—Bill of Exceptions.**

Where the bill of exceptions did not show the connection of the questions asked to the remainder of the witness' testimony or the evidence in the case, the same could not be considered.

**9.—Same—Evidence—Bill of Exceptions.**

Where defendant was being tried for perjury on an indictment that he had sworn falsely before the grand jury with reference to a certain game, testifying that he did not engage therein or see others play; that he was drunk, etc., there was no error in introducing testimony by the grand jurors that the defendant made these statements wilfully and deliberately; besides, the bill of exceptions was defective,

**10.—Same—Bill of Exceptions—Practice on Appeal.**

Objections in a bill of exceptions that the testimony is immaterial and irrelevant are equivalent to no objection, but the same must be so presented that it is not necessary to refer to any other bill of exceptions or other portions of the record to understand the connection in which the testimony is sought to be introduced.

**11.—Same—Evidence—Cross-Examination.**

Where, upon trial of perjury, the witness had been permitted to state why he had not testified before the grand jury and had testified in a companion case that the matter relative to a certain watch, which he was charged with stealing, had no connection with defendant's trial for perjury, there was no error in sustaining an objection to a question whether this was not a part of the same transaction.

**12.—Same—Evidence—Leading Questions.**

Where, upon trial of perjury, it appeared that the witness was unfriendly to the State, there was no error in permitting the State to propound leading questions to him in regard to the theft of a certain watch, which he is alleged to have stolen.

**13.—Same—Evidence—Moral Turpitude—Harmless Error.**

While it was permissible to ask defendant about a charge against him for the offense of arson, it was not permissible to ask him as to facts which would tend to show his guilt, in order to attack his credibility on his trial for perjury; but inasmuch as he received the minimum penalty and that such testimony had no bearing on the case, the error was harmless. Following Tinsley v. State, 52 Texas Crim. Rep., 95.

**14.—Same—Argument of Counsel—Charge of Court—Bill of Exceptions.**

Where there was no bill of exceptions reserved to the argument of the State's counsel, there was no error in refusing requested instructions withdrawing same; besides, the argument was in response to the argument of defendant's counsel.

**15.—Same—Continuance—Practice on Appeal.**

Where no bill of exceptions was reserved to the overruling of the application for continuance, there was no error.

**16.—Same—Requested Charges—Bill of Exceptions.**

Where the bill of exceptions assigned no reason for the refusal of requested charges, the matter could not be reviewed on appeal.

**17.—Same—Charge of Court—Corroboration—Words and Phrases.**

It is not necessary, upon trial of perjury, for the court to define what is meant by the word corroborative.

**18.—Same—Evidence—Bill of Exceptions—Practice on Appeal.**

Where there are no bills of exception in the record on appeal to the testimony objected to, the same can not be reviewed.

**19.—Same—Objections to Charge of Court.**

An objection that the court erred in the third paragraph of his charge in his definition of perjury, etc., is too general to be considered on appeal.

**20.—Same—Charge of Court—Limiting Impeaching Testimony.**

Where the testimony adduced is such that it can be used by the jury for any purpose other than as it affects the credibility of the witness, the jury should be instructed in regard to the matter; but if the impeaching testimony can only be used by the jury to affect the credibility of a witness, it is not necessary to submit a charge thereon.

**21.—Case Stated—Charge of Court—Impeachment.**

Where, upon trial of perjury, certain testimony could not be used by the jury for any purpose except that affecting the credibility of the witness, there was no error in the court's failure to limit the same to purposes of impeachment. Thompson v. State, 55 Texas Crim. Rep., 120, and other cases.

Appeal from the District Court of Hunt. Tried below before the Hon. R. L. Porter.

Appeal from a conviction of perjury; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Sam D. Stinson* and *Evans & Carpenter,* for appellant.—On question of admitting testimony of extraneous crimes: Jackson v. State, 33 Texas Crim. Rep., 281; Mahoney v. State, 33 id., 388; Warren v. State, 33 id., 503; Hargrove v. State, 33 id., 431; Sexton v. State, 33 id., 416; Oliver v. State, 33 id., 541; Bennet v. State, 43 id., 241; Scoville v. State, 77 S. W. Rep., 792; Wilson v. State, 76 S. W. Rep., 434; Hunter v. State, 59 Texas Crim. Rep., 439, 129 S. W. Rep., 125.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was indicted, tried and convicted of the offense of perjury, and his punishment assessed at two years confinement in the penitentiary.

The record in this case is in a most deplorable condition. The bills of exception are placed in the record without being numbered, being some forty of them. In the motion for a new trial it is said the court erred in admitting evidence "as shown by bill of exceptions number," giving a number, when the bills are not numbered, and in some instances referring us to bill No. 57, when there are not over forty in the record. The bills relating to the evidence and the charge, and the refusal to give special charges are mixed and mingled, and in some instances the same bill is in the record twice. The bills in regard to the testimony of a given witness are scattered about in the record. In one bill, are contained objections to a certain question and answer, and in another, another question and answer relating to the same matter. Attorneys and clerks should take more care in the preparation of the record if they expect us to give the matters that careful and thoughtful review that should be given each case.

1. In one bill it is complained that the district attorney was permitted to ask a witness "if he and Olvey Moore were not good friends." The interest, bias and state of feeling of a witness towards a defendant is always admissible in evidence.

2. In another bill defendant states he asked the witness Joe Shelton, "Could you testify that Olvey Moore was sober enough that night to comprehend what was going on in that room," to which the State objected as calling for the opinion and conclusion of the witness. The

objection was sustained, and defendant states he "expected to prove by said witness Olvey Moore was very drunk that night, and was in such condition that he could not know what occurred that night." . The court, in approving the bill, states: "Shelton testified fully in regard to defendant's drinking, and stated he did not know whether he was drunk or not—all that he knew was that he was drinking." As thus qualified the bill presents no error.

3. Defendant states that while the witness Shelton was on the stand the district attorney asked him, "Didn't you, Olvey Moore, and Dab Craig have an understanding before the grand jury met here that you would not tell about the game at the hotel?" to which the witness answered, "Me and Dabney had an understanding, but me and Olvey had none." The defendant objected on the ground that the question was leading and suggestive, when the district attorney remarked to the court: "He is not a willing witness," to which remark the defendant objected. And the question was repeated and he was asked "if he had so testified in the Dabney-Craig case," to which the witness replied, "I do not see into the question." The objections urged were that the questions were leading and suggestive, and an attempt on the part of the State to intimidate the witness. In the light of the qualification made by the court, the court did not err in overruling the objections made. The court says: "On the trial of the Dabney-Craig case the witness had so testified on cross-examination; that in this case he evaded the questions, and showed hostility to the State and was friendly to the defendant." Again defendant says the district attorney asked this witness, "Were you shooting dice when defendant was sitting on the bed?" which question was objected to on the ground that it was leading. It is not shown in the bill that any answer was made to this question, and the bill does not show in what connection it was asked. To the other questions in the bill no grounds of objection are stated, and the bill is so incomplete that we do not feel called upon to review the other matters relating to the examination or testimony of this witness. In Ballinger v. State, 11 Texas Crim. App., 323, it is held bills of exception must state enough of the evidence or facts to render intelligible the ruling of the court, and in Sims v. State, 30 Texas Crim. App., 605, it is held where bills of exception fail to state the grounds or reasons for the exception urged they are too indefinite to be considered. For a collation of authorities see White's Annotated Code of Criminal Procedure, sections 857 and 1123. In this case, by the qualification of the judge, it is shown that this witness was unfriendly to the State, and in such case it is within the discretion of the court to permit leading questions to be propounded. (Navarro v. State, 24 Texas Crim. App., 378.)

4. The defendant objected to the witness Joe Scott being asked, "Mr. Scott, were you so under the influence of whisky on that night that you did not know whether there was a game or not?" and being permitted to answer, "I was not." The court, in approving the bill,

states: "On cross-examination defendant's counsel endeavored to make him admit that he was drunk while in the room where the game was played. The witness had answered that he was not drunk, but was under the influence of whisky, when on redirect examination the above questions were permitted." As thus qualified it was not error to admit the evidence over the objections made, and in addition thereto in the bill only this isolated question and answer is placed, and its connection to the other testimony is not shown. Under the decisions above cited the bill is too incomplete to be considered.

5. On page 58 of the transcript is a bill of exceptions in the record in regard to the testimony of A. M. Butler, but same is not signed nor approved by the judge. On page 98 is another bill to a portion of the testimony of this witness, which is as follows:

"Be it remembered, That upon the trial of the above styled cause when the witness for the State, A. M. Butler, was on the stand, in rebuttal, the district attorney, over defendant's objection, was permitted to ask the following question: 'Then was he asked the question whether he bet in a game played with dice with Pete Blankenship, Joe Shelton, Joe Scott, or any other person in a room at the McBride hotel, Friday, December 23, or Saturday morning, December 24, 1910?' to which defendant objected because same was leading, suggestive, and was State witness, which objection was by the court overruled, and said witness answered: 'Yes, sir, he was asked that question.' And the district attorney asked the further question: 'Did he ever answer the questions that he did not recollect?' Objected to as leading and suggestive, and the objection was overruled by the court. The district attorney follows this up with the following question: 'Did he answer the questions at all; I don't remember, or did he make a positive answer.' Objected to as leading and calling for the opinion and conclusion of the witness, which objection was by the court overruled, and witness answered: 'No, his answer was that if there was any game he did not see it. This was his answer all the way through.' To which action of the court the defendant then and there excepted and objected and here now tenders his bill of exceptions No. ——, and asks that the same be signed, and approved and made a part of the record in this cause."

In this bill it is seen that it is not shown about whom the questions were being asked. Neither the questions nor answers disclosed about whom Mr. Butler was being questioned. Mr. Butler was a member of the grand jury and it appears that some person was before the grand jury, and was asked certain questions, but the bill does not disclose who it was, and but for the qualification of the judge to the bill we could not know, and as qualified by him the bill presents no error.

6. On page 58 of the transcript is a bill of exceptions to two questions propounded to Charlie Williams, the objection being that they were leading and suggestive. The connection of these two questions to the remainder of the witness' testimony, or the evidence as a whole in

this case, is not set forth in the bill, nor to what the questions really related.

7.   In the bill on page 60 it is shown that while the witness Elliott was on the stand he was asked, "I will ask you after the defendant testified as you stated, whether he was given an opportunity before he left the grand jury room to retract what he said," to which the witness answered, "Yes, sir, he was given the right to retract." Again this witness was asked, "Was this defendant asked the question what was his condition relative to being drunk or sober, which he answered." "He said he was not drunk." The further question was asked, "Was the defendant asked with reference to his condition as to whether he was scared or frightened or knew what he was doing," to which the witness answered, "Defendant said he was not scared nor frightened." He was asked the further question: "Do you know when he said Pete Blankenship came in the room," and he answered, "the defendant said Pete Blankenship came in after 12 o'clock some time." Other questions of similar import are shown to have been asked this witness, and questions of similar import were propounded to S. P. Cowan. The bills themselves (there being a number of them embracing these questions and answers) are incomplete, this court having held that a bill of exceptions, to be considered, must sufficiently set out the proceedings and attendant circumstances to enable the court to know certainly that an error has been committed. To place one or two questions in a bill by itself, and the answer thereto, the objection urged being that such question and answer was "immaterial and irrelevant" or that it called for the "conclusion and opinion of the witness," or that it was "calculated to prejudice the rights of defendant," without in some way pointing out to the court the connection that the evidence bears to the case, is too general. (Livar v. State, 36 Texas Crim. Rep., 115; McGrath v. State, 35 Texas Crim. Rep., 413.) But if we look to the entire record in this case, the materiality of this testimony becomes apparent at once, and if we look at the time of its introduction, and the object and purpose in introducing it, and the manner of its introduction, no error is presented. In this case appellant was being prosecuted for perjury. It was alleged he had sworn falsely before the grand jury, and it was necessary to show that it was wilfully and deliberately done. He testified on this trial that on the occasion when he swore that he did not engage in the game of craps, and did not see the others play, that if he played or saw the others play, that he was so drunk he did not remember it at the time he was before the grand jury, and testified he did not play, and did not see the others play. It then became material as to what he said about being drunk on that occasion when he testified before the grand jury, and the other questions all became material. The bills do not present the questions properly for review, but if they did do so, under this record, no error would be presented, if we take the evidence as a whole. A bill of exceptions ought to present a question so completely that it would not be necessary to

refer to any other bill or other portion of the record to understand the connection in which the evidence is sought to be introduced, and the objection thereto ought to be fully stated. Objections that it is immaterial and irrelevant are equivalent to no objection. If we must go to the record as a whole to determine any question in connection with the bill, then we go to it for all purposes and determine whether or not the evidence is admissible under any theory of the case raised by the evidence, and if so, no error is presented.

8. In a bill on page 67 of the transcript the defendant states he asked the witness Shelton, "Wasn't this watch taken or lost at the same time or place that this game took place and in the same room, and as a part of the same transaction," to which question the objection of the State was sustained by the court. Defendant states "he expected to prove by this witness in answer to said question that the taking of the watch was on the same night in the same room and a part of the same transaction; that he the witness was being prosecuted for the theft of the watch, and he had declined to answer any questions about this game before the grand jury under the advice of counsel, and this testimony was admissible as explaining why he had refused to make any statement before the grand jury in regard to the game." The court, in approving the bill, states: "This witness had explained fully that he did not make any statement before the grand jury because his attorney, H. L. Carpenter, one of counsel in this case, conducting the examination of the witness, had advised him not to testify before the grand jury, because his evidence before the grand jury might incriminate him on a charge of theft, wherein he was charged with stealing a watch from a man by the name of Pride at the same hotel on the same night. As to what he expected to prove by this witness will say: That this witness had testified about this transaction in the trial of the Craig case, a companion case to this, and he then stated that Pride was not present in the room where the game was played at no time during the night." It will be thus seen that in answer to other questions the witness had been permitted to state why he had not testified before the grand jury, and as to the fact that it was a part of the same transaction, the witness had testified otherwise in a companion case. Therefore, it is hardly reasonable to think defendant could have expected to prove by him that it was a part of the same transaction, and if we turn to the statement of facts we find that the testimony in this case would show that Pride was not in the room where the game is alleged to have been played, but was sleeping in an adjoining room, and, therefore, if the watch was taken, it could not and would not be a part of the same transaction as the alleged crap shooting. The other bills in regard to the theft of this watch present no error as qualified by the court, and that the questions were leading, as hereinbefore stated, when qualified by the court in approving them, that the witness was unfriendly to the State, present no error. In the case of Harris v. State, 37 Texas Crim. Rep., 446, Presiding Judge Davidson held: "As

far as the course pursued by the court in permitting leading questions to be propounded by the district attorney to a witness, this is a matter largely in the discretion of the trial court. If the witness being examined is an unwilling or reluctant witness, the privilege of propounding leading questions to a witness called by the State is not improper." It has so been held repeatedly by this court, and when appellant accepts a bill with this given as a reason, he is bound by such recitation, and if the witness, although introduced by the State, was an unwilling witness and antagonistic to the State, there was no error in permitting leading questions to be asked in the instances herein referred to under the circumstances as stated by the court in approving the several bills raising this question. For authorities see section 1105, White's Code of Criminal Procedure.

9. In a bill on page 98 defendant objected to the State being permitted to ask the defendant about a charge against him wherein he was charged with the offense of arson. A portion of this bill presents questions and answers that probably should not have been permitted, but the bill states no grounds of objection. The bill states: "All these questions and answers were over defendant's objections, and defendant then and there moved the court to strike out all of said questions and answers and exclude same from the consideration of the jury, which motion and objections were overruled by the court, and defendant then and there excepted and here tenders this his bill of exception," etc. While it is permissible to show that a person has been legally charged with an offense of the grade of felony, or involving moral turpitude, yet it is not permissible to ask a defendant in regard to facts which would tend to show that he was in fact guilty of such other offense, and even though there were no grounds of objection stated, we would feel inclined to sustain this objection, because there is no ground upon which said testimony would be admissible, if admitting said testimony could be said to have resulted in injury to defendant. By the record it is proven beyond doubt that there was a game of craps played in the room in the hotel, and that defendant was there at the time. In fact, there is no attempt made to prove that there was no such game, but it seems that the case was tried by the State and defendant on the theory that this was a fact beyond dispute, and it is fully proven by the State. The defendant says that when before the grand jury and asked about the game his answer was that "He did not remember," and he testifies that he was so drunk that night that he did not know what was transpiring and if a game was played he was too drunk to have any knowledge of it. The grand jurors testify that when defendant was before the grand jury that he denied in positive terms that any game was played there, and when told by the district attorney that a witness had testified to facts which showed that a game had been played in that room, he admitted his presence in the room, but still insisted on his denial that any game was played there. They further testify that he was asked if he was drunk that night, and he stated he was not

drunk, but had only had a couple of drinks, and they state he testified to other facts about when Blankenship came in the room, that would indicate he was not so drunk that he had no memory. It is proven beyond a reasonable doubt that he denied in positive terms that any game was played, if the testimony of the grand jurors is to be given any credence, and the issue of whether he was too drunk to have any knowledge of it was fairly submitted by the court to the jury. The jury in finding him guilty, assess the lowest penalty authorized by law, and the question for us to decide is, could admitting this improper evidence, although no grounds of objection are stated in the bill, have been injurious to defendant? Had the jury assessed more than the minimum penalty, we would be inclined to hold that it might have done so, but inasmuch as this improper testimony had no bearing on this case, and would not tend to show whether he was drunk or sober the night the game was played, we do not think it presents reversible error under the rule of law announced by this court in the case of Tinsley v. State, 52 Texas Crim. Rep., 91. Especially is this true when the answers elicited were such as they would tend to show that appellant was not guilty of the offense as charged. However, while the State may show that a person has been legally charged with crime of the grade of felony, or cases involving moral turpitude, as going to their credibility as a witness, it is not proper to permit questions to be asked a defendant which would tend to show that he in fact was guilty of such other offense, because he is not on trial for that offense.

10.　There are several bills of exception in the record to the failure of the court to give the several special charges requesting the court to instruct the jury not to. consider certain remarks alleged to have been made by the district attorney, but there is no bill of exceptions and nothing in the record to show that the district attorney made the remarks alleged except in those where the court so states in qualifying the bill. A bill should have been reserved showing that the district attorney used the language attributed to him. Asking a special charge does not prove the fact that the language was used. In those cases wherein the court gives his reasons for refusing the charge, it is stated that the argument was made in response to the argument of appellant's counsel. In one instance appellant asked the court to charge the jury: "You will not consider the remarks of the district attorney as follows: 'I didn't take the stand in this case, no, because it is always embarrassing to me when I have to testify in a case in making the argument, and I didn't consider it necessary because all the witnesses from the grand jury told you how it occurred.'" Said statement of the district attorney is not evidence and not a part of the record, and you will not consider it for any purpose whatever." The court gives as a reason for refusing the charge: "The defendant's counsel in their argument had asked the jury why the district attorney had not taken the stand as a witness to deny what defendant Moore had sworn, and the above statement was made in reply to their argument." In the

other instances it is also stated that the remarks were in reply to the remarks of defendant's counsel. Vincent v. State, 55 S. W. Rep., 819; (Martin v. State, 30 Texas Crim. App., 354).

11. There is no bill of exception reserved to the action of the court in overruling the application for a continuance, consequently we can not review this matter.

12. There is a ground in the motion for new trial alleging that the court erred in failing to give to the jury special charges Nos. 1 and so on, giving·the numbers without setting out the charges, or stating any reason why they should have been given. In the bills of exception no reason is assigned why these charges should have been given. This question is fully discussed in the case of Ryan v. State, recently decided by this court, and the authorities cited, beginning with Quintana v. State, 29 Texas Crim. App., 401. However, we have read these charges and in so far as they are applicable to this case they were covered in the main charge, in the supplemental charge and charge given at the request of defendant.

13. It was not necessary for the court to define what is meant by the word "corroborated." The meaning of this word is generally understood, and it is not necessary that its meaning be defined in the charge.

14. There are no exceptions in the record to the testimony of the witnesses Rouse, Litchfield, Acker, Bailey, and some other witness named in the motion for new trial, consequently we can not consider these grounds in the motion, especially as it is not stated what was testified by the parties or what part of their testimony was excepted to.

15. Such grounds as "The court erred in the third paragraph of his charge in his definition of perjury;" and "The court erred in the ninth paragraph of the charge because the same fails to present to the jury the case as presented by the testimony, and does not present the defense as set up by the defendant," are too general to be considered. Quintana v. State, 29 Texas Crim. App., 401, and authorities cited.

16. The only other ground in the motion is the failure of the court to limit certain testimony to the purposes of impeachment only. If the testimony adduced is such that it can be used by the jury for any purpose other than as it affects the credibility of the witness, the jury should be instructed in regard to the matter. But if the impeaching testimony can only be used by the jury to affect the credibility of a witness, it is not necessary to charge on this subject at all. Brown v. State, 24 Texas Crim. App., 170; Schwartz v. State, 53 Texas Crim. Rep., 449; Thompson v. State, 55 Texas Crim. Rep., 120; Waters v. State, 54 Texas Crim. Rep., 322. As the testimony in this case could not be used by the jury for any purpose other than as it might affect the credibility of the witness, it was no error for the court to fail to so charge.

We have carefully gone over this record, and tried to rule on all

questions raised, but, as before stated, the record is not in proper shape and condition that we could take it up and dispose of the questions raised in a connected way, but finding no error that should cause a reversal of the judgment, it is affirmed.

*Affirmed.*

ON REHEARING.

March 6, 1912.

HARPER, JUDGE.—This case was affirmed at a former day of this term, and appellant has filed a motion for rehearing, earnestly insisting that we erred in that paragraph of the opinion in which we said that the failure of the court to limit certain testimony did not present reversible error, appellant citing a number of cases where they had been reversed on account of the failure of the court to so limit the testimony.

The rule established by this court, and the true rule is, if the testimony introduced to impeach or affect the credibility of a witness could be used by the jury, or would have a tendency to prove the defendant on trial guilty of the offense for which he is on trial, it must be limited to the purpose for which it was admitted or the case will be reversed. On the other hand, if the testimony can only be used by the jury to affect the credibility of the witness it is sought to impeach it, it need not be limited. In the case of Carroll v. State, 58 S. W. Rep., 340, this court, speaking through Judge Davidson, held: "Appellant was convicted of arson, and his punishment assessed at confinement in the penitentiary for a term of five years. Appellant, while confined in jail, set fire to and sought to burn the jail. During the trial it was proved that appellant was incarcerated under a charge of burglary. The only ground of the motion for new trial is a criticism of the charge, for failing to limit the effect of this evidence to the impeachment of appellant's credibility as a witness. It is only necessary to limit this character of evidence when there might be danger of its being used injuriously to defendant, or for the purpose of convicting him of an offense for which he was not on trial. The case is a very clear one, fully proved, and the punishment the lowest authorized by statute. We see no reversible error in this matter. Wilson v. State, 37 Texas Crim. Rep., 374, 39 S. W., 373; Moseley v. State, 36 Texas Crim. Rep., 578, 37 S. W., 736, 38 S. W., 197; Leeper v. State, 29 Texas App., 63, 14 S. W., 398."

In Moseley v. State, 36 Texas Crim. Rep., 581, he again holds: "Appellant also complains that the trial court erred in failing to restrict to its legitimate purpose the testimony introduced on the trial, that the saddle and bridle taken with the stolen horse, and which were on the horse at the time he was taken, could only be used for the purpose of establishing the identity, in developing the res gestae of the offense, to show the connection of defendant therewith, or the intent with which he acted in regard to the horse. It has been held that with

reference to this character of cases the charge should usually be given, but it is not absolutely necessary to be given, unless the character of the property stolen contemporaneous with the theft charged is such that the jury might convict for that offense. But there is no danger of a conviction for stealing a saddle and bridle under a charge of theft of a horse, or receiving said horse after it was stolen."

See also Thompson v. State, 55 Texas Crim. Rep., 120; Waters v. State, 54 Texas Crim. Rep., 322; Schwartz v. State, 53 Texas Crim. Rep., 449; Watson v. State, 52 Texas Crim. Rep., 85; Poyner v. State, 40 Texas Crim. Rep., 640; Givens v. State, 35 Texas Crim. Rep., 563; Blanco v. State, 57 S. W. Rep., 828; Magee v. State, 43 S. W. Rep., 512; Robinson v. State, 63 S. W. Rep., 870; Newman v. State, 70 S. W. Rep., 951.

All the other questions raised in appellant's motion for new trial are fully discussed in the original opinion, and we do not deem it necessary to do so again. However, we thought it advisable to cite the additional authorities showing when it is and when it is not necessary to limit the purposes for which such testimony may be admitted. In this case the testimony could not be used by the jury as a circumstance of any character tending to show appellant's guilt for the offense for which he was on trial.

The motion for rehearing is overruled.

*Overruled.*