## J. H. GRAHAM v. THE STATE.

No. 8435.   Decided October 22, 1924.

No motion for rehearing filed.

**1.—Murder—Evidence—Animus and Prejudice of State's Witness.**

The witness, Mrs. Henry, testified for the state, to incriminatory facts against the appellant.   On cross-examination of this witness appellant, on objection made by the state, was not permitted to prove by her that she would not like to see him turned loose, but wanted to see him convicted, and severely punished.   The exclusion of the evidence was error.   The defendant is entitled to show animus and prejudice on the part of a state witness toward him, and its extent, and in such examination great latitude is allowed, when the object is to impeach the credit of such witness.   See opinion for collection of authorities.

**2.—Same—Evidence—Other Offenses—Not Admissible.**

Counsel for the state, on cross-examination of appellant, was permitted, over his objection to ask him if he did not tell Jack Kennedy that he had killed a man in New Orleans, and got out of it on the testimony of his wife. This character of testimony has often been held inadmissible. For purposes of impeachment the accused when tendered as a witness in his own behalf, may be asked if he had not been legally charged with the murder of another man, but the specific fact that he had killed another man has uniformly been held inadmissible.

**3.—Same—Argument of Counsel—Improper.**

Counsel for the state in his remarks, said to the jury. "And when we asked them if he didn't tell Jack Kennedy he killed a man in New Orleans, Mr. Moore objected that it was past seven years, and too remote." Testimony objected to and objection sustained, should not be discussed in argument. This record does not disclose whether such an objection was made or not, and a discussion of same if excluded, or if no such testimony was introduced, was so harmful as to require a reversal. See Underhill on Criminal Evidence, 3d Ed., p. 187, Sec. 150. Branch's Ann. Tex. P. C., sec. 156.

Appeal from Criminal District Court of Tarrant County. Tried below before the Hon. Geo. E. Hosey, Judge.

Appeal from a conviction of murder; penalty, life imprisonment in the penitentiary.

*Simpson, Moore & Parker,* for appellant.

*R. K. Hanger,* Circuit District Attorney, *J. B. Martin,* Assistant District Attorney, *Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

MORROW, Presiding Judge.—Murder is the offense; punishment fixed at confinement in the penitentiary for life.

Appellant shot and killed D. L. Haynie. The parties were neighbors, living upon the same street some 300 feet apart. The alley in the rear of their premises was used in common. Appellant was cultivating a garden upon his premises which was unfenced. The chickens belonging to the deceased made depredations upon the appellant's garden, and prior to the day of the homicide, the matter had been discussed between them.

It was the State's theory that the appellant went to the home of the deceased and, using harsh language, told the deceased that his chickens would be killed if they were not kept off the premises of the appellant; that the deceased responded that he had endeavored to keep them off and would now go and drive them off the appellant's premises; that the appellant left the premises of the deceased, going into the alley in the direction of his home but stopping before he reached it; that the deceased unarmed, going for the purpose of carrying into effect his promise to drive the chickens off the prem-

ises of the appellant, went into the alley and towards the premises of the appellant when the appellant began firing at the deceased, shooting five shots, the first taking effect on the front of his person or in his breast, the other four taking effect in the back of his body; that prior to the beginning of the shooting the deceased made no demonstration and used no threatening language, but that after the shooting began, he threw a rock at the appellant.

The only eyewitness to the entire transaction introduced by the State was Mrs. Henry. Other State witnesses, however, saw parts of the transaction and detailed upon the witness stand what they saw. Their testimony was not in conflict with that of the State's witness, Mrs. Henry, but tended to support and corroborate it.

Appellant testified in his own behalf. According to his theory when he went to the premises of the deceased and threatened to kill the chickens if they were not kept off the premises of the appellant, deceased used abusive language and said that if the chickens were killed by the appellant, he would be killed by the deceased; that deceased finally said: "I will get my gun and do it now." According to his testimony, appellant then went to his home, got his pistol, went back into the back yard for the purpose of shooting the chickens, and was throwing rocks at them when he heard his wife scream; that he turned and saw the deceased close to him. The deceased began cursing him and threatened to kill him. Appellant believing that his life was in danger, began shooting and continued to shoot.

The wife of the appellant was used as a witness and corroborated him with reference to what took place at the time of the shooting.

After Mrs. Henry had given the testimony favorable to the State to which we have adverted, appellant propounded to her a question to which she would have answered that "she did feel kindly toward him but would not like to see him turned loose but wanted to see him convicted and severely punished." The objection of the State that this was a conclusion of the witness and irrelevant, immaterial, improper and prejudicial, was sustained. This court, by proper bill of exceptions, is called upon to review this action of the learned trial judge.

In the treatment of this subject, Mr. Branch, in his Ann. Tex. P. C., page 93, says:

"The motives which operate upon the mind of a witness when he testifies are never regarded as immaterial or collateral matters. The adverse party may prove declarations of a witness which tend to show bias, interest, prejudice, or any other mental state or status which fairly construed might tend to affect his credibility."

"The defendant is entitled to show animus and prejudice on the part of the State witness towards him, and its extent, and in such

examination great latitude is allowed when the object is to impeach the credit of such witness."

Supporting the conclusions stated, many decisions of this court are listed in Section 163. Among them are Mason v. State, 7 Texas Crim. App., 623; Bennett v. State, 28 Texas Crim. App., 540; Watts v. State, 18 Texas Crim. App., 384; and numerous others. This proof may be made either by the witness himself or others. Watson v. State, 9 Texas Crim. App., 245; Daffin v. State, 11 Texas Crim. App., 79. And though the witness admits bias or prejudice the extent of it may be shown. Magruder v. State, 35 Texas Crim. Rep., 219; Lyon v. State, 42 Texas Crim. Rep., 506; Sherley v. State, 163 S. W. Rep., 708. The expressed opinion of the witness that the accused ought to be hung has been held admissible. Reddick v. State, 47 Texas Crim. Rep., 995. The state of mind or feeling of the witness towards the accused is not to be exclucded because it is a conclusion. Moore v. State, 144 S. W. Rep., 598; Ward v. State, 159 S. W. Rep., 278.

"It is competent to show the state of feeling of a witness when called to testify, for the purpose of giving the jury all the facts necessary to a full and fair consideration of his evidence, and enable them to determine the degree of credit." Ruling Case Law, Vol. 28, p. 615, Sec. 204.

It is our understanding that the court and text-writers are in accord upon this proposition. See the notes under the section mentioned. Upon both reason and authority it cannot be denied that in declining to receive the testimony the rights of the appellant were transgressed. It remains but to determine whether by the error his case was prejudiced, or rather, whether it appears from the whole record that he was not injured.

Appellant, by his testimony, presented evidence upon which the jury, had they believed it or part of it, might have acquitted him upon the ground of self-defense or might have mitigated the punishment. His credibility, as well as that of Mrs. Henry, whose testimony was in direct conflict with that of the appellant upon the vital inquiry as to what took place immediately before the shooting began. To aid the jury in weighing her testimony and measuring its value against that of the appellant, it was his right to have them know the state of her mind towards him and that it was her desire that he be punished. What effect the excluded testimony would have had upon the jury this court cannot know. Suffice it to say that the record does not demonstrate that the error was not harmful to the appellant.

It appears from Bill No. 3 that while appellant was on the witness-stand, he was asked by State's counsel if he did not tell Jack Kennedy that he had killed a man in New Orleans and got out of it on

the testimony of his wife. To this question the appellant objected, and after the court overruled it, the witness replied:

"Well, I don't remember just exactly what statement I made to him. No, sir; not that I know of."

The bill is qualified with the statement that the appellant afterwards gave a definite negative answer to the question. No reason is given or perceived for proving that Kennedy had been told by the appellant that he had killed another man. A general objection to the question should have resulted in its exclusion. Bell v. State, 2 Texas Crim. App., 220; Brown v. State, 57 Texas Crim. Rep., 269; Branch's Ann. Tex. P. C., Sec. 208, subdivision 3. The testimony seems to have been obviously inadmissible and hurtful. Kennedy was not a witness nor in any way connected with the transaction or trial so far as the record reveals. Appellant having become a witness in his own behalf, it might have been competent to prove, for the purpose of impeachment, that he had been legally charged with the murder of another man, if not too remote, *but the specific fact that he had killed another man has often been held inadmissible.* See Ware v. State, 36 Texas Crim. Rep., 599; Branch's Ann. Tex., P. C., Sec. 169; Johnson v. State, 91 Texas Crim. Rep., 589; Wigmore on Evidence, Vol. 1, Sec. 193; Underhill's Crim. Ev. (3d Ed.), Sec. 141. In view of the explanation of the bill showing that the appellant ultimately gave a negative answer, the error of the court in requiring him to answer it might not, if the incident had been pursued no further, have been so harmful as to require reversal. As shown by another bill, however, State's counsel in his remarks said to the jury:

"And when we asked them if he didn't tell Jack Kennedy he killed a man in New Orleans, Mr. Moore objected that it was past seven years and too remote."

Not elsewhere does it appear that such objection was made. If such objection was made, it should have been sustained because the inquiry, as has been stated above, called for no relevant testimony, but put into the record matters prejudicial to the appellant's case. Appellant denied that he had made such a statement, and counsel in his argument, in commenting upon the ruling, in effect contradicted this denial. The action of the trial court in overruling the objection to the argument and in refusing to withdraw it left in the minds of the jury the idea that the use against the accused of the fact that he had killed another was sanctioned by the court. Courts uniformly take note of the fact that jurors naturally believe that one is guilty of the crime with which he is charged if it is shown that he had committed another similar offense. The general rule of evidence, therefore, excludes testimony showing that the accused committed another offense. There are exceptions to the rule and limi-

tations of it which are emphasized by many of the decisions of this court. None of these exceptions, however, occur in the present record. For treatment of the subject, see Underhill on Crim. Ev., (3d Ed.), p. 187, Sec. 150; Branch's Ann. Tex. P. C., Sec. 166. That such damaging fact comes before the jury through the argument of counsel deprives it of none of its sting. Branch's Ann. Tex. P. C., Sec. 364, subdivision 2; Stephens v. State, 20 Texas Crim. App., 255. It is true that this court is reluctant to order a reversal of the judgment because of the argument of counsel. When, however, the argument offends against some provision of the Constitution or statute and is obviously hurtful, especially when the evidence is conflicting and the penalty high, a reversal often becomes necessary. Bringing into the case new facts, especially those showing the commission of another offense, has always been considered hurtful. See Vernon's Tex. Crim. Stat., Vol. 2, Art. 724, note 11; also 1922 Supplement, p. 2472, note 11, page 2474, note 23.

In the record before us the evidence touching the cause of the homicide and the actions of the respective parties to the tragedy immediately preceding the firing of the first shot is conflicting. Those favoring the accused tend to exculpate him; the opposing testimony tends to show an assassination.

The verdict condemns the appellant to life imprisonment. In our opinion, facts calculated to improperly influence the jury have come before it in a manner not sanctioned by law. That the conviction or the penalty assessed is unaffected by the improper procedure, this court is unable to determine.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*