WILLIAM F. GRIMES v. THE STATE.

No. 18080. Delivered April 22, 1936.
Rehearing Denied June 3, 1936.

The opinion states the case.

*Wm. F. Grimes,* of Houston, in pro. per.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted of the offense of uttering, aiding and assisting in uttering a false and forged deed relating to land located in Montgomery County, and his punishment was assessed at confinement in the state penitentiary for a term of ten years.

The indictment in this case embraces three counts. The first charged the appellant with committing forgery of a deed relating to land in Montgomery County. The second count charged him with uttering and assisting in uttering a forged deed relating to land in said county; and the third count charged him with having conspired to utter and use as true forged deeds, etc.

The record in this case discloses a bold attempt on the part of some unscrupulous persons by means of forged deeds to deprive the heirs of J. W. Lewis of 212½ acres of land situated in the oil field of Montgomery County, Texas, or to induce them to pay a large sum of money to avoid litigation which might seriously interfere with their right to the unrestricted use and enjoyment of said land and the revenue to be derived therefrom.

The facts, as revealed by this record, show that on the 22nd day of December, 1919, J. W. Lewis, a practicing attorney in the city of Houston, Harris County, Texas, conveyed to T. J. Bell by general warranty deed 3 85/100 acres of land out of the Faqua survey located in Montgomery County, Texas. Lewis died on the 7th day of April, 1922, and his brother, C. E. Lewis, was appointed administrator of the estate. In the year 1932 prior to the first day of November, W. S. Bell turned over to A. B. Carlile a number of old deeds including the deed from J. W. Lewis to T. J. Bell conveying the aforesaid 3 85/100 acres of land. The purpose for which Bell turned the deeds over to Carlile was to determine whether there were any back taxes due on said lands and if necessary to straighten out the title to land therein conveyed. Carlile took the deeds to the office of Lipper & Grimes and left them in their possession for the purpose for which they were delivered by Bell to Carlile. These deeds were never returned to Bell, by either Carlile or Lipper & Grimes. Soon thereafter W. F. Grimes claimed that there was a tract of land consisting of 212½ acres located in the Stewart survey in Montgomery County which J. W. Lewis

had conveyed to one Thomas H. Walker; that he knew where the original deed to said land was; that a daughter of Thomas H. Walker had it. This fact was made known to Carlile, who communicated it to D. D. Peevy, Walter Yerby, and others with a view of inducing them to advance the necessary money to acquire the interest of the heirs of Thomas H. Walker, deceased, in and to said 212½ acres, and to acquire the purported original deed from Lewis to Walker. After all necessary arrangements had been agreed upon among them for the necessary money, appellant instructed Carlile to go to San Antonio where Miss Minnie May Walker and her brother would meet him at the Crockett Hotel and make a conveyance of their interest as children and heirs at law of Thomas H. Walker, deceased, in and to said 212½ acres of land to one F. W. Coon, who was to hold it in trust for appellant and all parties interested with him. Carlile went to San Antonio, accompanied by one A. C. Springfield, where he met a woman who theretofore had been introduced to him by the appellant as Minnie May Walker, but who in truth and fact was Ida May Gilbert. She exhibited a purported deed from J. W. Lewis to Thomas H. Walker conveying said 212½ acres of land out of the Stewart survey in Montgomery County, Texas. A deed was prepared in which she was represented as a child and heir at law of Thomas H. Walker, deceased, which she signed and acknowledged as Minnie May Walker, conveying her interest in and to said land. The so-called brother of Minnie May Walker failed to make his appearance, which Carlile, by telephone, communicated to appellant. Whereupon appellant requested Carlile to get someone purporting to be a child and heir at law of Thomas H. Walker, deceased, to sign and acknowledge a deed conveying his interest in said land to Mr. Coon. Carlile advised appellant that he was not very well acquainted in the city of San Antonio, and, therefore, could not suceed in complying with appellant's request. Whereupon appellant requested Carlile to send A. C. Springfield back to Houston, and told Carlile that he would send a man back to San Antonio with Springfield, who would sign and acknowledge a deed purporting to be a deed from Thomas H. Walker, Jr., as a child and heir at law of Thomas H. Walker, deceased, conveying his interest in and to said land. This request of the appellant was complied with and he sent a man by the name of Grass, who signed and acknowledged the deed purporting to be from Thomas H. Walker, Jr., as a child and heir at law of Thomas H. Walker, deceased, conveying his interest in and to said 212½ acres of

land. Carlile was furnished with $530.00, of which he gave to Ida May Gilbert, alias Minnie May Walker, $250.00; and thereupon the said Carlile, Ida May Gilbert, alias Minnie May Walker, and A. C. Springfield returned to the city of Houston about the 16th day of November, 1932, where Carlile again saw the purported deed from J. W. Lewis to Thomas H. Walker in the possession of appellant. After their return to Houston, A. B. Carlile induced his brother to make, sign, and acknowledge a deed purporting to be a deed from W. W. Walker conveying his interest in and to said land unto the said Coon for the use and benefit of appellant and others.

Appellant induced Callie Shotwell to make a copy of said purported deed from J. W. Lewis to Thomas H. Walker in her own handwriting, and attach thereto an affidavit stating that she had been to Montgomery County, Texas, and made the copy from the deed records of said county, for which she received $250.00. Appellant also instructed her that when she had done so, to destroy the deed. After having complied with said request and instruction, she gave the copy of said deed, which she had made, together with the affidavit to appellant, who asked her in the presence of Carlile if she had destroyed the deed from Lewis to Walker. She replied that she burned it in a frying pan; that no one would ever see it. Prior to the time that Carlile went to San Antonio, appellant had photostatic copies made of said purported deed from Lewis to Walker, and in making the photostatic copies he covered up whatever was written or printed on the second page below the acknowledgement so that it would not be reproduced on the copy. The photostatic copies were exhibited to Yerby, Peevy, and Morgan. Peevy and Yerby made a close inspection of the photostat and observed that the date of the acknowledgement was the same as the date of the acknowledgement of the deed from Lewis to Bell; that it was acknowledged before the same notary; that the type in the body of the deed was different from the type in the acknowledgement, all of which they pointed out to the appellant. They also pointed out to him that the photostat showed that the brads by which the deed and cover were fastened together had been removed. They told appellant and Lipper that it did not look good to them and that they would not have anything further to do with it.

The appellant sent the three deeds purporting to be the act and deed of Minnie May Walker, W. W. Walker, and T. H. Walker, Jr., to the county clerk of Montgomery County with the request that he record the same, accompanied by sufficient

funds to pay the recording dues. This request was complied with, and after said purported deeds were recorded, the clerk returned them to the firm of Lipper & Grimes of which firm appellant was a member. It also appears from the record that some person, whose identity is not disclosed by this record, cut certain pages out of the deed records of Montgomery County, of which the appellant and Lipper were aware. Thereafter appellant wrote the following letter to C. E. Lewis, administrator of the estate of J. W. Lewis, deceased:

"January 6, 1933.

"Mr. C. E. Lewis,
"1727 Colquitt Ave.,
."Houston, Texas.
."Dear Sir:

"I represent the heirs and assigns of the heirs of Thomas H. Walker, deceased. In 1919 J. W. Lewis conveyed to Thomas H. Walker by a general warranty deed two hundred twelve and fifty-one one-hundredths acres of land off of the East end of the C. B. Stewart Survey in Montgomery County, Texas. Walker did not convey this property during his life time and his heirs have not conveyed the same except to the parties that I represent.

"The deed from J. W. Lewis to Thomas H. Walker of the above mentioned property was properly recorded in Montgomery County, Texas, but I am informed that the record has been removed or destroyed and I am planning to file suit to reestablish this record within the next day or two.

"From my investigation, your claim is subject to the claim of my clients and is, therefore, adverse to conflicts with our claim, therefore, if you continue to assert your claim adversely, it will be necessary to institute trespass to try title proceedings and ask for damages in addition thereto.

"If you care to take up this matter with me before filing suit, do so immediately because my clients are insisting that I file this suit without delay.

"Appreciating your very prompt reply, I am
"Yours very truly,
"William F. Grimes.

"WFG:T
"Ccs-Strake Oil Corporation
"Tidal Oil Company."

Appellant has a great number of bills of exception in the record complaining of the ruling of the court in many particu-

lars, one of which is, that the court erred in declining to grant his request for a peremptory instruction on the ground that it was charged in the indictment that appellant exhibited a photostatic copy of an alleged forged deed to divers persons, whose names were unknown to the grand jury, but that no proof was offered in support of said allegation. We have carefully gone over the record, but fail to find any testimony which shows appellant exhibited a photostatic copy of the alleged forged deed to any person or persons whose names were unknown to the grand jury and could not have been ascertained by the exercise of reasonable diligence. It has been held by this court that whenever it is charged in an indictment that property was received by the accused from a person whose name was unknown to the grand jury, that some proof must be offered that such a party's name was unknown to the grand jury and that by the exercise of reasonable diligence it could not be ascertained. See Carlisle v. State, this day decided by this court (Page 246 of this volume) in which the question is more fully discussed. See also Ireland v. State, 272 S. W., 181; Mayfield v. State, 234 S. W., 885; Moseley v. State, 37 S. W., 736.

The appellant's next contention is that the testimony is not sufficient to warrant and sustain his conviction under paragraph five of the court's charge in which the court instructed the jury as follows: "You are further instructed that by the terms 'false making, uttering or using' a forged instrument is meant the presenting of the alleged instrument to some person for the purpose of getting money or credit on it or the offering to exchange said instrument for money or credit." While this definition is ordinarily sufficient in cases of forgery, however, under Art. 1008, P. C., 1925, relating to forgery of land titles it will be observed that the definition therein given is far more comprehensive than that given by the court in his charge and includes assisting or advising the same to be done.

For the errors herein above pointed out, the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant files a motion for rehearing in which he requests the court to pass upon other questions

mentioned in his motion, in view of another trial. It is not thought necessary at this time to pass upon any other questions. If another trial should be had it might not be under the same conditions and the same issues of law might not arise.

Appellant also suggests that the facts as stated in our original opinion be withdrawn because in view of the disposition of the case it was not necessary to set out the facts, and for the further reason that they reflect upon appellant. As far as the court feels called upon to go is to say that the recitals in our original opinion were not to be understood as a statement of the facts *established* upon the trial, but our purpose was to condense the substance of the State's evidence. In fairness to appellant it may be said that much of the criminative testimony against appellant came from the witnesses Carlile and Yerby, who were recognized by the trial court to be accomplice witnesses as a matter of law, and the jury was so told. The criminative facts testified to by said witnesses and many others were denied by appellant.

The State has also filed a motion for rehearing. The motions of both appellant and the State are overruled, save as to the explanations herein found.

*Overruled.*