## DOCK WATSON v. THE STATE.

No. 3820.　Decided November 20, 1907.

**1.—Murder—Manslaughter—Evidence—Weapon of Deceased.**

The fact that deceased may have had some other weapon at the time of the homicide would not preclude the State from introducing testimony that a little pocket-knife was found in the pocket of the deceased immediately after the shooting by defendant, which was the only knife found about his person.

**2.—Same—Evidence—Mental Status of Parties.**

Upon trial for murder there was no error to permit a witness to testify that the conversation of deceased with the defendant, and his conduct towards the defendant a few minutes prior to the homicide seemed to him and was apparently friendly; and this, although the witness may never have known the party before.

**3.—Same—Contradicting Witness—Remark of Judge.**

Upon trial for murder there was no error in permitting State's counsel to ask defendant's witness if defendant had attempted to bribe him to leave the country; and the language of the court in overruling defendant's objection to the effect that defendant's counsel could not put that kind of bridle on the State's attorney, although a forceable figure, was not reversible error.

**4.—Same—Opinion of Witness—Immaterial Testimony.**

Upon trial for murder where a State's witness had denied on cross-examination that he had made a certain statement to defendant's witness a few days after the homicide that defendant knew when he and deceased got together that the defendant would have to do quickly what he was going to do, there was no error in not permitting the defendant's witness to contradict State's witness with reference to this statement.

**5.—Same—Ill-will—Temperament of Parties.**

Upon trial for murder there was no error to permit the State to show friendly relations between deceased and defendant about two years prior to the killing, in rebuttal of defendant's evidence of threats and ill-will of deceased towards defendant prior to that time.

**6.—Same—Misconduct of Jury—Viewing Scene of Homicide.**

Upon trial for murder there was no error in the fact that the officer in charge allowed the jury to go over the ground where the difficulty had occurred, where there was no question as to the relative position of the parties, and it was not shown that the jury received evidence from an inspection of the ground that could militate against the rights of the defendant.

**7.—Same—Qualifications of Special Instructions.**

Where upon trial for murder the court submitted defendant's special instruction with qualification, with notice to defendant's counsel and acquiescence therein by him, there was no error; besides the qualifications presented the law of the case.

**8.—Same—Charge of Court—Real and Apparent Danger.**

Where upon trial for murder the court charged upon every possible phase of real and apparent danger, in accordance with the directions by this court upon former appeal, there was no error; besides the record suggested very little real or apparent danger to defendant at the time he shot deceased.

**9.—Same—Limiting Testimony—Impeachment of Witness.**

Upon trial for murder where the impeaching testimony could not have been appropriated by the jury for any other purpose than impeachment, there was no error in not limiting said testimony to that issue.

Appeal from the District Court of Nacogdoches. Tried below before the Hon. James I. Perkins.

Appeal from a conviction of manslaughter; penalty, four years imprisonment in the penitentiary.

The facts of this case will be found in the opinion of the court on a former appeal.

*King & King,* for appellant.—On question of limiting testimony: Exon v. State, 33 Texas Crim. Rep., 461; Owens v. State, 35 Texas Crim. Rep., 345. On question of charge of court on threats: Miles v. State, 18 Texas Crim. App., 171. On question of permitting jury to visit locus in quo: Darter v. State, 39 Texas Crim. Rep., 45; Nelson v. State, 58 S. W. Rep., 107.

*F. J. McCord,* Assistant Attorney-General, for the State.—On question of mental attitude of parties: Miller v. State, 18 Texas Crim. App., 232; Powers v. State, 23 Texas Crim. App., 42; Irvine v. State, 26 Texas Crim. App., 37.

### ON MOTION FOR REHEARING.

*November 20, 1907.*

BROOKS, JUDGE.—Appellant was convicted of manslaughter, and his punishment assessed at four years confinement in the penitentiary

On a former day of this term, there being no twenty day order in the record at that time authorizing the statement of facts to be filed after term time, the statement of facts was stricken from the record and the case affirmed on the theory that there was no alleged error that could be reviewed in the absence of said statement of facts. Appellant thereupon filed a motion for rehearing, attaching thereto a certified copy of the twenty day order, which had been filed according to law, and the case now comes before us anew.

This is the second appeal of this case. The former opinion will be found in the 50 Texas Crim. Rep., 171, 16 Texas Ct. Rep., 587.

Bill of exceptions No. 1 complains that the court permitted the State

to introduce before the jury as evidence a certain small pocket-knife. The court states that the knife admitted in evidence was shown to have been taken from the pants pocket of deceased a few minutes after the shooting, and to have been the only knife found about his person, and was identified by witnesses as being identical in all respects with the knife deceased had in his hand at the drugstore a few minutes before the shooting. Appellant objected to this testimony on the ground that the knife was not identified as the one deceased had, or that he did not have some other knife, or some other character of weapon about his person at the time. The fact that he (deceased) may have had some other weapon would not preclude the introduction of the little knife found in his pocket immediately after the shooting. The record shows that deceased, a few moments before the homicide, had a small knife in his hand, which defendant told deceased he had better put up; it might get some one in trouble. The evidence further shows that several witnesses testified that deceased had a knife in his hand at the time he was advancing upon appellant. Immediately after the shooting the knife introduced in evidence was found upon his person, and was the only character of weapon so found. The testimony was clearly admissible.

Bill of exceptions No. 2 shows that the State's witness, M. R. Klease, was permitted to testify, over the objection of defendant that the conversation of deceased with the defendant, and his conduct towards the defendant at Perkins, Klease & Mast's drugstore, which happened a few minutes prior to the homicide, seemed to him and was apparently friendly. Appellant objected to this testimony on the ground that it was not shown that the witness was acquainted with the temperaments and inclinations of the deceased, and the same was but an expression of his opinion as to the meaning, effect and acts of the deceased at the time. The court states that the question permitted to be asked the said witness was this "What was Charley Chandler's manner?" The answer was, "He seemed to be in a good humor, as far as I could tell." Charley Chandler was the deceased.

Bill of exceptions No. 3 complains, in substance, of the same testimony being introduced by another witness. This bill states the witness was asked the following question: "State what his manner was? A. It seemed to me he was in a good humor; of course I don't know." Defendant again objected. The court: "Was it in an angry or jocular or serious manner; how was it? A. I should judge it was in a sort of jolly manner; all were just laughing and talking, unless it was defendant. I don't remember seeing him laugh any; all the rest of us were, especially Mr. Klease and deceased." This character of testimony has repeatedly been held by this court as admissible. There is no other way of getting the tone, inclination, manner and temper of a witness, or a party to a transaction, before the jury than to permit the witnesses to state the manner. The mere fact that a witness may never have known the party before would not preclude his telling his impressions

as to the mental status of the party at the time. That is to say, would not prevent his knowing whether his conversation, his manner and conduct, were angry or in a good humor and jolly; and certainly, if the parties were laughing and talking, any witness of average intelligence, regardless of whether he had ever seen the parties or not, could, with accuracy, state that fact. See Powers v. State, 23 Texas Crim. App., 42; Miller v. State, 18 Texas Crim. App., 232, and Irvine v. State, 26 Texas Crim. App., 37.

Bill of exceptions No. 4 complains that the State was permitted to ask appellant's witness Sullivan if he did not receive a letter from Dock Watson soon after the killing in which he told him he would give him $100 to get out of the way. The witness answered that he had not received any such letter. The court overruled the objection to the question, and remarked that "he could not put that kind of a bridle on the district attorney; he (the witness) can answer the question." The bill seems to object to the comments of the court. We see no objection to the statement of the court. It appears the court used a very forcible figure to enforce a ruling. Nor would it be any objection to the testimony or question either, that it had been asked before. The district attorney may have forgotten that he asked him, or may have become convinced that a renewal of the question would elicit the fact sought by the question. If appellant had attempted to bribe the witness to leave the country, this would be very powerful testimony against appellant. See Rice v. State, decided at the present term of this court.

Bill of exceptions No. 5 complains the court erred in excluding from the consideration of the jury the testimony of Jasper Williams, by whom appellant proposed to prove that a few days after the homicide deceased's brother, R. L. Chandler, had told said Williams that appellant knew when he and deceased got together appellant would have to do what he was going to do and do it quick. The witness Chandler having denied making the statement, the testimony was offered to impeach him. The State objected to this character of impeachment on the ground that same was immaterial and was merely an opinion of the witness and did not state any facts. This exact question was passed upon by this court in the former appeal of this case, and decided against appellant.

Bill of exceptions No. 6 complains that while deceased's wife was upon the stand she was permitted, over appellant's objection, to state that appellant had, about two years prior to the killing, come to the home of deceased and served some civil processes upon him, to which testimony appellant objected on the ground that it was immaterial and happened two years prior to the difficulty and, therefore, too remote from the killing to make legitimate and proper evidence to be introduced in the case. This bill is approved with the following explanation: "The testimony was admitted in rebuttal of evidence of former difficulty, threats, and ill-will of deceased towards defendant, because this meet-

ing of the parties at the home of deceased when they shook hands, talked friendly and deceased invited defendant to dine with him, took place some years subsequent to the former difficulty, and many of the threats proven by defendant." Under the explanation of the court the testimony was entirely admissible.

The sixth ground of the motion for a new trial complains that the jury received new and additional testimony after this cause had been submitted to them in that during the five days that they were deliberating upon this cause, after the same had been submitted to them, they were carried by the officer in charge over the ground in the town of Nacogdoches where the difficulty occurred, and in passing and going over the ground where the same occurred, the jury upon one occasion stopped and observed the ground and physical surroundings where the testimony showed the difficulty had occurred, and in this connection appellant insists that the evidence was introduced prior to the jury reaching a conclusion. Evidence was introduced on this ground of the motion for a new trial and from a careful perusal of same we hold that no prejudicial error is shown by appellant. It seems that the homicide was on a main street leading into the public square of the town of Nacogdoches. There is no point or principle involved in the relative positions or places indicated on the street occupied either by appellant, deceased or the witnesses; in fact, there is scarcely any cavil over the same. The difficulty occurred in a narrow street, and the only divergence in the views expressed by the various witnesses is to the demonstrations and acts of the deceased, appellant insisting that he was retreating and deceased advancing on him with a knife. The State's witnesses make out a cruel and wanton murder. We have held, of course, that if the jury should receive evidence from an inspection of the ground that could militate against the rights of appellant, it would be reversible error, but the statement of facts presenting this matter shows no such condition.

The 7th ground of the motion complains that the court erred in refusing to give to the jury without qualification and in qualifying defendant's special instructions No. 1. We find various charges in this record tendered by appellant with the qualifications thereon. It is the duty of appellant to tender special charges to the court, and if appellant does not accept the qualifications of the court, to have his special charges refused as written without qualification, when he acquiesces and consents to the qualification, this is, on his part, an acceptance of the qualification. We have frequently suggested this in former opinions of this court. Certainly appellant should not be heard to complain if the court, when presented a special charge, says, in substance, "I will give your charge with this qualification," and does give it, and appellant accepts it; then it places appellant in the attitude of asking the charge with the qualification, and he cannot be heard to complain. But, be this as it may, we have examined all of the qualifications of the court's charges to appellant's special charges, and find that the qualifications are in

consonance with the laws of this State and the facts as adduced upon the trial of this case.

Appellant complains also that the court failed to charge upon real and apparent danger. The court charged upon every possible phase of real and apparent danger. The case was formerly reversed because the court did not do so, and in this case the trial court seems to have made an extra effort to obviate any possible criticism made by this court upon the former charge. We think he has succeeded in so doing. The record before us, however, suggests very little real or apparent danger to appellant at the time he shot the deceased. The court tells the jury that appellant would have a right to act on reasonable appearance of danger from his standpoint; if deceased had made an attack upon him he would have a right to defend himself, or if deceased was about to make an attack. The charges presenting these matters are so voluminous that we do not deem it necessary to copy same in order to make more manifest the suggestions heretofore made.

The 8th ground of the motion for a new trial complains of the following: The court erred in failing to limit the testimony in his charge to the jury of the witness Roe Chandler, introduced by the State for the purpose of impeaching the witness R. B. Hall, introduced by the defendant, and in failing to charge the jury that they could consider such testimony of said witness for the purpose only in determining the credibility and the weight they would give to the said witness. The defendant's witness, R. B. Hall, had testified that in the latter part of December or the first of January, prior to the killing on the 5th day of March, 1906, he had seen the deceased, C. C. Chandler in the town of Nacogdoches, and had a conversation with him, in which he said Chandler stated as defendant passed near where they were standing, "There goes a damn s— of — that took advantage of me once and I intend to have revenge. When I get a chance I will make him s— right where he is hitched." The State's witness, Roe Chandler, was introduced by the State after the witness Hall had denied making any statement to said Roe Chandler that he had not seen deceased in two years prior to the killing, to the effect that the said Hall had told him some two months after the killing that he had not seen the deceased for two years prior thereto. Now, appellant insists this testimony should have been limited for the purpose of impeaching the witness Hall, and that the court erred in not so limiting same. If the testimony could be appropriated by the jury for any other purpose than impeachment, it would be prejudicial error not to so limit it, but this testimony could not have been used by the jury for any other purpose than to impeach the witness Hall. We accordingly hold there was no error in the court refusing to limit said testimony.

We have carefully read and re-read the charge of the court, and, as stated, without copying same in detail, we think the same very properly presents the law applicable to this case, and certainly as favor-

able to appellant as any evidence adduced upon the trial authorized. The motion for rehearing is, therefore, overruled.

*Overruled.*

Henderson, Judge, absent.