## Boze Dugat v. The State.

### No. 1663. Decided June 5, 1912.

**1.—Theft of Cattle—Brand—Evidence of Ownership.**

Where, upon trial of theft of cattle, the record on appeal showed that the parents of the alleged owner had died many years before the trial; that said owner was their only child and heir, and had inherited the brand and constantly used it, there was no error in introducing in evidence the brand record which showed that the brand on the alleged animal was recorded in the name of the father of the alleged owner.

**2.—Same—Evidence—Different Brands.**

Where, upon trial of theft of cattle, the brand objected to as a different brand, from the one relied on as ownership was in fact not introduced in evidence, but offered only in connection with the bill of exceptions, there was no error; besides the introduction of such brand would not have invalidated the record of the former brand.

**3.—Same—Evidence—Place on Animal for Brand—Statutes Construed.**

It is not necessary that the brand record should show upon what part of the animal the brand was placed, as article 4921, Revised Civil Statutes, law of 1848, controls this matter, and the Acts of 1874 and 1876 requiring that the record must show upon what part of the animal the brand was placed does not apply to the county of the prosecution, which was exempt therefrom.

**4.—Same—Amendment—Constitutional Law—Reenactment of Law.**

The act of March 23, 1874, which extended said requirement to the county of the prosecution, being obnoxious to section 18 of article 12 of the Constitution of 1869 was inoperative and void, as it reenacted said law by reference only.

**5.—Same—Date of Record of Brand—Presumption.**

Where, upon trial of theft of cattle, the date of the record of the brand introduced in evidence did not appear on the line on which the brand is recorded, but the date preceding this line was given, it will be presumed that this date is the date of record of all brands in the book until the next date occurs therein.

**6.—Same—Rule Stated—Date of Record.**

The rights of the owner of a brand can not be affected by the failure of the clerk to place the date there, when the owner complies with the laws as required under article 4921, Revised Civil Statutes.

**7.—Same—Statutes Construed—Brand—Evidence of Ownership.**

The requirement, that the record of the brand must show the part of the animal upon which it is placed, did not apply to the county of the prosecution under the Act of the Sixteenth Legislature approved April 22d, 1879, and said county has been exempt from this provision ever since, and therefore brand records not showing upon what part of the animal the brand is to be placed were admissible in evidence of ownership.

**8.—Same—Exemptions—Live Stock Law—Local Laws.**

Section 23 of article 16, Constitution of 1876, provides that the Legis-

lature may pass laws for the regulation of live stock, etc., and exempt from the operation of such laws other portions, sections or counties.

**9.—Same—Evidence—Brand on Cattle.**

Upon trial of theft of cattle, there was no error in permitting the alleged owner to testify that his parents were dead and that for many years he was the sole child and heir of their property including the brand on animals, and that he kept up this brand.

**10.—Same—Bill of Exception—Practice on Appeal.**

In the absence of bills of exception to the admission and exclusion of testimony, and the overruling of a motion for continuance, there is nothing to review on appeal.

**11.—Same—Requested Charges.**

Where the evidence was sufficient to sustain the conviction there was no error in refusing peremptory instructions to acquit.

**12.—Same—Charge of Court—Possession of Stolen Property.**

Where, upon trial for theft of cattle, the evidence showed that the alleged animal when found was branded in defendant's brand; that the original brand was changed; that defendant kept his cattle in the pasture where this animal was found, and that he had been seen around there shortly before the animal was found, there was no error in the court's failure to submit a requested charge that if the jury believed that other parties had an equal right with defendant to use the pasture that this fact would not establish the possession of the alleged stolen animal in defendant.

**13.—Same—Verdict.**

A verdict which finds the defendant guilty as charged in the indictment, and assesses his punishment at two years in the penitentiary is not unintelligible or vague.

**14.—Same—Charge of Court—Animal Running on Range.**

Where, upon trial of theft of cattle, the alleged stolen animal was found in a certain pasture in the county of the prosecution, it was immaterial under article 235, Code Criminal Procedure, in what county the animal was taken and there was no error in the court's failure under the evidence to charge that the animal must have been taken from its accustomed range.

**15.—Same—Charge of Court—Other Transactions—Intent.**

Where, upon trial for theft of cattle, it was shown that two head of cattle claimed by the alleged owner were found together, but the indictment charged the theft of only one of them, there was no error in the court's charge in limiting the theft to the animal described in the indictment, and that the evidence with reference to the other animal could only be considered on the question of intent.

**16.—Same—Charge of Court—Weight of Evidence.**

Where the testimony with reference to defendant's control of a certain pasture was not controverted, there was no error that the court's charge assumed this fact. Following Byrd v. State, 53 Texas, Crim. Rep., 508, and other cases.

**17.—Same—Charge of Court—Other Offenses—Limiting Testimony.**

If the testimony of other offenses can only be used to impeach a witness it is not necessary to charge on the subject at all, and where the court limited the conviction to the question as to whether defendant took a certain head of cattle, there was no reversible error.

**18.—Record of Brand—Rules of Evidence—Ownership.**

Under the general rules of evidence, testimony that an animal was branded in a given brand and that a named person was the owner of that brand, is admissible in evidence unless prohibited by statute, and is some evidence of his ownership,

and there was therefore no error in admitting evidence of the record of the brand of the alleged owner in a trial of theft of cattle.

**19.—Same—Brand Record—Statutes Construed.**

If brands and marks are admissible in evidence in the absence of a statute, then those provisions of the laws of 1874 and 1876, which render inadmissible the record of a brand unless the record shows on what part of the animal the brand is placed, have no application to those counties not under the operation of that law.

**20.—Same—Statutes Construed—Repealing Clause.**

The Act of April 28, 1874, wherein it was attempted to place Liberty County under the provisions of the Act of March 3, 1874, can not be termed a repealing statute but was an attempted amendment of the law, and therefore unconstitutional under section 18, article 12 of the Constitution of 1869.

**21.—Same—Statutes Construed—Place of Brand.**

Whether the Act of the Fourteenth Legislature claiming to place Liberty County under the operation of the Act of March 18, 1874, had this effect or not it is clear that the Act of the Sixteenth Legislature, chapter 30, passed April 22, 1879, exempted Liberty County from the requirements that the record of the brand must designate the part of the animal upon which it is placed.

**22.—Same—Statutes Construed—Presumption.**

Again, by the Act of August 26, 1876, the record as introduced in evidence of the brand on the alleged animal was rendered valid, as this Act has no provision that the part of the animal on which the brand is placed shall be transcribed, and it must be presumed that the clerk complied with said Act, after a lapse of thirty-four years of time.

**23.—Same—More than One Brand.**

The fact that more than one brand was used by the alleged owner is evidence of nothing more than that he had perhaps purchased certain marks and brands, the evidence showing that in originally marking and branding the only used the brand which was recorded in his father's name in 1875, and which was on the alleged stolen animal.

**24.—Same—Stock Laws.**

Stock laws, like other prohibitory laws are only in force in those counties where it is so provided by law.

**25.—Same—Charge of Court—Other Offenses.**

Where, upon trial of theft of cattle, the court in his charge limited the consideration of the jury alone to whether or not the defendant was guilty of the theft of the animal described by the witnesses, there was no error in the court's failure to limit the testimony as to other offenses. Following Moseley v. State, 36 Texas Crim. Rep., 581 and other cases.

Appeal from the District Court of Liberty. Tried below before the Hon. L. B. Hightower.

Appeal from a conviction of theft of cattle; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Brockman, Kahn & Williams,* for appellant.—On question of the various statutes with reference to record of brand: Acts of 1874, page 39; section 42, page 45, Act of 1874; section 44, pages 45 and 46, Act of 1874; section 45, id., page 46; Acts of 1874, pages 154 and 232, and the different legislative acts cited in the opinion.

On the question of repeal and amendment of statutes: Chambers v. State, 25 Texas, 312; Hearn v. State, 25 Texas, 336; Fielder v. State, 40 Texas Crim. Rep., 187.

To warrant an inference or presumption of guilt from the circumstance alone of possession, such possession must be personal, that is, exclusively in the person charged with the theft; and it must involve a distinct and conscious assertion of ownership by the defendant. Perkins v. State, 32 Texas, 110; Casas v. State, 12 Texas Crim. App., 59; Lehman v. State, 18 Texas Crim. App., 174; Robinson v. State, 22 Texas Crim. App., 690; Field v. State, 24 Texas Crim. App., 422; Funderburg v. State, 34 S. W. Rep., 613; and other authorities cited in Branch on Criminal Law of Texas, paragraph 794.

That the record of a brand which fails to designate the part of the animal on which the brand was to be placed is not admissible to show, and does not prove ownership is supported in the following authorities, to wit: Massey v. State, 31 Texas Crim. Rep., 91; Reese v. State, 43 Texas Crim. Rep., 541; Steed v. State, 43 Texas Crim. Rep., 569.

Where the records show that the person claiming to own the brand has more than one brand recorded, record of said brand is not admissible to prove and does not prove ownership. Turner v. State, 39 Texas Crim. Rep., 322; Unsell v. State, 39 Texas Crim. Rep., 331; Swan v. State, 76 S. W. Rep., 464.

Where the owner of a brand has been selling cattle out of that brand every year for many years, proof of recorded brand alone is not sufficient proof of ownership. Clark v. State, 20 S. W. Rep., 555.

It has been held in the following cases that if proof of ownership depends alone upon an illegally recorded, or upon an unrecorded brand, or upon a brand recorded subsequent to the alleged theft, conviction will not be sustained, such brands furnishing no evidence of ownership whatever, to wit: Poag v. State, 40 Texas, 151; Allen v. State, 42 Texas, 518; Preismuth v. State, 1 Texas Crim. App., 481; Fisher v. State, 4 Texas Crim. App., 181; Hutto v. State, 7 Texas Crim. App., 44; Maddox v. State, 12 Texas Crim. App., 433; Combes v. State, 1 Texas Crim. App., 266; Wyers v. State, 21 Texas Crim. App., 448; Romero v. State, 24 Texas Crim. App., 131; Crowell v. State, 24 Texas Crim. App., 411; Burke v. State, 25 Texas Crim. App., 172; Childers v. State, 37 Texas Crim. Rep., 395; Sapp v. State, 77 S. W. Rep., 457.

The following authorities hold that parol evidence of a recorded or of an unrecorded brand, is of itself no evidence of ownership, to wit: Allen v. State, 42 Texas, 518; Elsner v. State, 22 Texas Crim. App., 687.

The following authorities support the proposition that it is reversible error not to limit proof of previous convictions, indictments, charges or evidence of other offenses admitted only to affect the credibility of defendant as a witness, to wit: Jackson v. State, 33 Texas Crim.

Rep., 288; Hargrove v. State, 33 Texas Crim. Rep., 454; Mahoney v. State, 33 Texas Crim. Rep., 388; Sexton v. State, 33 Texas Crim. Rep., 416; Warren v. State, 33 Texas Crim. Rep., 503; Oliver v. State, 33 Texas Crim. Rep., 541; Hutton v. State, 33 S. W. Rep., 969; Bennett v. State, 43 Texas Crim. Rep., 242; Scoville v. State, 77 S. W. Rep., 792; Wilson v. State, 76 S. W. Rep., 434.

Proof of a brand, though properly recorded, is not proof of ownership in any person except the person named on the record of said brand as the owner thereof. Horn v. State, 30 Texas Crim. App., 543.

*C. E. Lane,* Assistant Attorney-General for the State, and *D. J. Harrison,* County Attorney, and *H. E. Marshall.*—Cited authorities in the opinion.

HARPER, JUDGE.—Appellant was indicted, tried and convicted of the offense of theft of cattle, and sentenced to two years confinement in the penitentiary.

1. The question presented by bill of exceptions No. 1 presents the most serious question in the case. Appellant was charged with the theft of one head of cattle, the property of A. D. Middleton. A. D. Middleton testified that his father was named David Middleton; that he was dead, having died in 1877; that witness was his only heir. That his mother also died in 1877, and neither made any will, and he, being the only child, inherited all the property belonging to his father and mother at the date of their death. He testified to finding a beef in the Ford pasture, leased to appellant. That the beef was originally branded  $JH9$  (J. H. 9) and originally marked  $\infty$ , calling it a swallow fork in one ear, and crop in the other. That when he found the animal in the Ford pasture the brand and mark had been changed, and the brand then was as follows:  $JHU$  (J. H. U—U inverted) and the mark  $\infty$ , it being a swallow fork in one and crop and underbit in the other ear. The State then offered in evidence the brand of David Middleton, being recorded in brand book one of Liberty County, Texas, the date at the top of the page being January 27, 1875, and on next line below said date being a date December 20, 1875, and then follows ditto marks under this date down to and including Brand No. 5, there being no ditto marks after No. 5, the brand of David Middleton being No. 16, on the line of which David Middleton's brand appeared being no date of registration, unless the date preceding should govern. When the record of the brand of David Middleton was offered in evidence, being the  $JH$  the defendant objected on the following grounds:

"1st. Because that brand being the brand of David Middleton is not evidence of ownership in Archie Middleton of the brand.

2d. Because in the same record of brand book on page 2, No. 26, shows the record of another and a different brand being the andiron brand with forks above it as the recorded brand of David Middleton,

and because the recorded brand as offered by the State fails to show where on the animal the brand is to be placed—it fails to designate what part of the animal the brand is to be placed upon.

3d. That the introduction of the recorded brand of one party will not prove ownership in another, and because the said David Middleton had more than one brand recorded."

In approving said bill the court qualifies it thus: "Allowed with the qualification that the ⨏ was the only brand that the State put in evidence, and Middleton, the alleged owner, testified he never used any other brand. The grounds of objection are correctly stated in the bill, but I am not willing to endorse everything contained in the bill as to what the testimony was. The statement of facts will show the evidence, and the exhibit 'A' attached to this bill was not a part of the testimony in the case." The appellant accepts this bill as qualified, and we must accept same as correct.

The first objection is that the record shows it to be the brand of David Middleton and not the brand A. D. Middleton, and is not evidence of ownership in him. If the brand was all the evidence the objection might be tenable, but the court declines to prove the statement of evidence in the bill and refers to the statement of facts, and by reference to that instrument we find that David Middleton and his wife died in 1877, and A. D. Middleton was their only child and heir, and inherited the brand, and he has constantly used the ⨏ brand from the date of the death of his father to the date of the trial in this case. Under this state of facts there was no error in overruling the first objection.

The second objection is, that the brand book shows that David Middleton also had a different brand on record, being the andiron brand with forks above it. The judge in approving the bill declines to approve it as to the facts stated in the bill, and says "Exhibit A" was not a part of the testimony in the case. The statement of facts shows that this brand was not introduced in evidence as stated by the judge, but offered only in connection with the bill of exceptions; it did not go before the jury to be considered by it, but if it had been so introduced, the Supreme Court has held in McCline v. Sheeks, 68 Texas, 430: "It is true that the statute provides that a party shall have but one mark and brand, but this was not intended to prevent a stockman from changing them. The bill shows that the Palo Pinto brand was recorded in 1875, and the Parker County record was not made until 1880. We do not see that the latter record invalidated the former." In this case, if the latter brand had been introduced in evidence, it should not be held to have invalidated the former record, especially as the testimony shows in this case that ⨏ has been exclusively used for more than thirty years immediately preceding the trial of this case.

The next objection is that the record fails to show upon what part of the animal the brand was placed. This necessitates a con-

struction of several statutes. In 1848 the Legislature enacted a law (which is now article 4921 of the Revised Statutes) that "Every person who has cattle shall have an ear mark and brand differing from the ear mark and brand of his neighbors, which ear mark and brand shall be recorded by the clerk of the county where such cattle shall be; and no person shall use more than one brand, but may record his brand in as many counties as he may think necessary." This has been the law from 1848 until the present date, except in those counties which by later Acts (the Acts of 1874 and 1876) provided different conditions. In 1874 the Legislature passed an Act (House Bill No. 16) entitled "An Act to encourage stock raising and for the protection of stock raisers," being chapter 38, of the Acts of the Fourteenth Legislature, and in section 20 of that Act it was provided that the place on the animal on which the brand should be placed should be designated, but Liberty County, the county in which this brand was recorded was exempted from the operation of that Act, in section 44, thus leaving the law of 1848 in force in Liberty County. It is true that the same Legislature later in the session in chapter 108 undertook to place Liberty County under the provision of that Act by enacting the following: "Section 1. Be it enacted by the Legislature of the State of Texas, That the provisions of House Bill No. 16, 'an Act to encourage stock raising and for the protection of stock raisers,' approved March 23, 1874, be and the same is hereby extended to the counties of Liberty, Orange, Chambers and Jefferson." By reference to those Acts it will be seen that it was section 44 of House Bill No. 16 that this later Act undertook to amend, and by the later Act, the first Act nor the section thereof sought to be amended was not reenacted, but it was sought to amend a certain section by reference to the number and title of the bill. This was prohibited by section 18 of article 12 of the Constitution of 1869, which was then in force, said section of the Constitution reading as follows: "No law shall be revised or amended by reference to its title; but in such cases, the Act revised, or section amended shall be reenacted and published at length." It is thus seen that chapter 108, which undertook to place Liberty County under the provisions of chapter 38 · was unconstitutional and invalid, for it did not reenact the entire law nor the section which it sought to amend, but simply referred to the Act by its title, thus leaving Liberty County under the provisions of the law of 1848, and the brand being recorded in 1875, was properly and legally recorded under the Act of 1848.

In the brief it is insisted that one section of the Act of 1848 (being now article 4929 of the Revised Statutes) made it the duty of the county clerk to note the date on which the brand is recorded. In this case the date does not appear on the line on which the brand is recorded, but by the bill of exceptions it is shown, that the date preceding this line is December 20, 1875, and after this lapse of time it will be presumed that this date is the date of record of all brands in the

book until the next date occurs in the book. If this were not true, the rights of the owner of the brand could not be affected by the failure of the clerk to place the date there when the owner had complied with what the law required him to do as set forth in article 4921, where no other person was asserting claim to this brand by a record thereof. Sufficient data was placed on the record to inform the public and place them on notice that David Middleton was the owner of the stock of cattle in that brand. The statutes require that the clerk shall place on a deed the date it is filed for record, and record and index the deed. If the clerk in recording the deed should fail to record the date of its registration, no one would seriously contend that this would render invalid the record of the deed, or that the record thereof was inadmissible in evidence. In one instance, the law required the deed to be placed of record to give all notice; in the other it required the brand to be recorded for the same purpose, and if the clerk had failed to place the date of record, it would not have rendered the record inadmissible in evidence. We have carefully reviewed all the laws passed in regard to stock raising since 1874, and find that Liberty County was placed under the provisions of chapter 165 of the Acts of the Fifteenth Legislature, approved August 23, 1876, yet it was exempted from the operation of that law by chapter 130 of the Acts of the Regular Session of the Sixteenth Legislature, approved April 22, 1879, and has been exempt from the provisions of that law since said date, thus in 1879 coming again under the general law of 1848, which law is now and was at the date of this trial in force in Liberty County, and by the provisions of that law (now article 4930 of Rev. Stat.) brands recorded by the officers named in the law of 1848 are admissible in testimony as evidence of ownership, and the court did not err in admitting the testimony, nor in refusing the special charge instructing the jury not to consider the record of this brand as any evidence of ownership. Appellant cites many cases decided by this court, holding that brands of record which do not show the part of the animal on which the brand is placed is inadmissible in testimony as evidence of ownership. That is a correct rule of law in those counties embraced in the provisions of the Acts of 1874 and 1876, because it is so provided in those Acts, but in counties which are not embraced, but by the terms thereof specifically exempted from the provisions of the Acts of 1874 and 1876, such rule does not prevail, but the rule as announced in the Act of 1848 prevails, because that is the law in force in those counties. Section 23 of article 16 of the Constitution of 1876, provides the Legislature may pass laws for the regulation of live stock and the protection of stock raisers in the stock raising portion of the state, and exempt from the operation of such laws other portions, sections or counties. The Legislature in its wisdom having seen proper to exempt Liberty County from the operation of the stock laws as passed in 1874 and 1876,

we are not authorized to seek to enforce any portion of said laws in said county.

2. Neither did the court err in permitting A. D. Middleton to testify that his father and mother were dead, and had died in 1877, and he was the sole child and heir, and inherited all the property, in which was included this brand and all cattle owned by his father, and that he had kept this ⨍ up since that date, and it was the only brand he used.

3. These are all the bills of exception reserved to admitting and excluding testimony, and we can not consider the grounds in the motion for a new trial in regard to other testimony, nor can we consider the ground complaining of the refusal of the court to grant a continuance, there being no bill reserved. (White's Ann. Proc. Sections 645, 851 and 1123.)

4. The first three special instructions requested were peremptory instructions and the court did not err in refusing to give them, and we have passed on the question raised by special charge No. 4 (see article 4930, Rev. Stat.). The only other special charge in the record is one requesting the court to instruct the jury that if they believed that the animal was found in the Ford pasture, and they further believed that Floyd Dugat and others had an equal right with appellant to use the pasture, the fact that the animal was found in the pasture should not be considered as tending to establish the possession of the alleged stolen animal in appellant. The animal when found was found branded in appellant's brand, he owning the ⨍ brand, and the testimony of the State showed that Middleton's ⨍ brand had been recently changed to ⨍. The testimony further showed that appellant kept his cattle in this Ford pasture, and that he had been in and around this pasture two or three days, just a short time before the animal was found in the pasture. This being a case of circumstantial evidence, the circumstance that the the animal was found in a pasture leased by him, was admissible to be considered with other circumstances in the case, and the court did not err in refusing the special charge. Buckley's Crim. Digest, Title One, subdiv. 7; Noftsinger v. State, 7 Texas Crim. App., 301; Cooper v. State, 19 Texas, 450; Langford v. State, 17 Texas Crim. App., 445.

5. A verdict which reads: "We the jury find the defendant guilty as charged in the indictment," and assess his punishment at two years in the penitentiary, is not unintelligible or vague. McGee v. State, 39 Texas Crim. Rep., 380, and section 840 Branch's Crim. Law.

6. Appellant complains that the court in his charge fails to instruct the jury that an animal running on the range would be in the owner's possession, and to take it from the range would be taking it from the possession of the owner. The alleged owner, Mr. Middleton, testified that his cattle runs in Chambers, Jefferson and Liberty Counties, but the principal part of them ranged in Chambers County. The Ford pasture, in which the animal was found, is in the lower edge

of Liberty County, and within a half mile of the Chambers County line, and testifies he had cattle running near there, and on direct examination he testified he and the sheriff and others found two head of his cattle in the Ford pasture, the brand on both having been changed from ⟊ to ⟊ and the marks had been changed; that these changes had been recently made. Article 235 of the Code of Criminal Procedure provides that where property is stolen in one county and carried off to another by the offender, he may be prosecuted either in the county where he took the property, or in any county through or into which he may have carried the same. The pasture in which the animal was found being in Liberty County, and the prosecution being had in Liberty County, it would be immaterial whether the animal was taken in Liberty, Jefferson or Chambers County. And it is the law of this State that animals on their accustomed range are in the possession of the owner, and one who takes an animal from the range takes it from the owner's possession. (Cameron v. State, 44 Texas, 652; Jones v. State, 3 Texas Crim. App., 498; McGrew v. State, 31 Texas Crim. Rep., 336; White's Ann. Code, section 1507, subdiv. 5.) In this case, no other person was claiming possession or ownership of this brand or cattle in this brand; the evidence shows that defendant was in the community where Ford pasture is situated on July 3d and remained there until July 9th, and that during that time he was in the Ford pasture; that he and he alone claimed cattle in the ⟊ brand, and this animal had its brand changed to that when found in the Ford pasture on July 12th. The witnesses Middleton, Mayes, Ben Brown, John Brown and others all testify that they were experienced cattlemen, and that the changes in the mark and brand on the animal had been made in from seven to ten days, and under these circumstances it was not error for the court to fail to charge that it must have been taken from its accustomed range, for there was no evidence that cattle in the ⟊ brand ranged anywhere else than in the territory testified to by Mr. Middleton.

7. In the testimony for the State, it was shown that two head of cattle claimed by Middleton were found in the Ford pasture at the same time, July 12th, while this indictment charged the theft of only one head of cattle. The defendant introduced in evidence another indictment against him for the theft of one head of cattle, and the court in his charge limited the jury in this case to passing on the question whether or not he took the black beef steer testified to by the witnesses. In this there was no error. The court instructed the jury: "You are further charged that the testimony of the witnesses as to other cattle found in the pasture under the defendant's control, to wit: the Ford pasture—in the mark and brand the same as the witnesses state was the mark and brand of the black beef in question (if you find and believe there was such other cattle in such mark and brand) was offered in evidence upon the question of intent only, and the defendant can not be convicted for the taking of

such cattle (if he did take such cattle) no matter what the facts may be as to such other cattle."

Appellant insists that this was upon the weight of the testimony, in that it instructed the jury that the Ford pasture was in appellant's control. The testimony, and all the testimony, shows this to be the fact. The owner of the pasture testified he leased it to appellant, and no other person, and the testimony of appellant only shows that he permitted others to place cattle in the pasture, but they were in there by his permission and he had the right to permit or exclude, consequently it was in his control, and it has been frequently held by this court that for the trial court to assume a fact that is undisputed in the evidence is not error. (Byrd v. State, 53 Texas Crim. Rep., 508; Romero v. State, 56 Texas Crim. Rep., 437; Sebastian v. State, 44 Texas Crim. Rep., 509; Shields v. State, 38 Texas Crim. Rep., 252.)

8. The only other criticism of the charge is that the court erred in failing to limit the purposes for which the testimony with reference to defendant having been indicted in other cases could be used by the jury. The evidence shows that defendant on direct examination had testified that he was indicted in Jefferson County and he introduced the indictment in the other case in Liberty County, thus being the person who first brought these other offenses in evidence. The question of whether evidence of extraneous crimes should be limited in the court's charge is one that has been frequently discussed by this court, and we frankly state that its holding has not always been uniform. In the case of Carroll v. State, 58 S. W. Rep., 340, Presiding Judge Davidson held in an opinion concurred in by all the court:

"Appellant was convicted of arson, and his punishment assessed at confinement in the penitentiary for a term of five years. Appellant while confined in jail set fire to and sought to burn the jail. During the trial it was proved that appellant was incarcerated under a charge of burglary. The only ground of the motion for new trial is a criticism of the charge for failing to limit the effect of this evidence to the impeachment of appellant's credibility as a witness. It is only necessary to limit this character of evidence when there might be danger of its being used injuriously to defendant, or for the purpose of convicting him of an offense for which he was not on trial. The case is a very clear one, fully proved, and the punishment the lowest authorized by statute. We see no reversible error in this matter. Wilson v. State, 37 Texas Crim. Rep., 374, 39 S. W., 373; Moseley v. State, 36 Texas Crim. Rep., 578, 37 S. W., 736, 38 S. W., 197; Leeper v. State, 29 Texas App., 63, 14 S. W., 398.' In Moseley v. State, 36 Texas Crim. Rep., 578, 38 S. W., 197, he again holds: 'Appellant also complains that the trial court erred in failing to restrict to its legitimate purpose the testimony introduced on the trial, that the saddle and bridle taken with the stolen horse, and which were on the horse at the time he was taken, could only be used for the purpose of estab-

lishing the identity, in developing the res gestæ of the offense, to show the connection of defendant therewith, or the intent with which he acted in regard to the horse. It has been held that with reference to this character of cases the charge should usually be given, but it is not absolutely necessary to be given, unless the character of the property stolen contemporaneous with the theft charged is such that the jury might convict for that offense. But there is no danger of a conviction for stealing a saddle and bridle under a charge of theft of a horse, or receiving said horse after it was stolen.' See also Thompson v. State, 55 Texas Crim. Rep., 120, 113 S. W. Rep., 536; Waters v. State, 54 Texas Crim. Rep. 327, 114 S. W. Rep., 628; Schwartz v. State, 53 Texas Crim. Rep., 451, 111 S. W. Rep., 399; Watson v. State, 52 Texas Crim. Rep., 90, 105 S. W. Rep., 509; Poyner v. State, 40 Texas Crim. Rep., 640, 51 S. W., 376; Givens v. State, 35 Texas Crim. Rep., 563; Blanco v. State, 57 S. W. Rep., 828; Magee v. State, 43 S. W. Rep., 512; Robinson v. State, 63 S. W. Rep., 870; Newman v. State, 70 S. W. Rep., 953."

In fact, after a thorough discussion of this question the rule finally adopted seems to be tersely stated in Branch's Crim. Law, section 873, where it is held, "if the testimony can only be used to impeach a witness it is not necessary to charge on the subject at all," citing many authorities. In this case the court limited a conviction to a question of whether appellant "took one head of cattle—the black beef steer testified to by witnesses," and the record being in this condition, this question does not present reversible error.

The judgment is affirmed.

*Affirmed.*

ON REHEARING.

June 5, 1912.

HARPER, JUDGE.—In this case the appellant has filed a motion for rehearing, the first ground of which is, the court erred in holding that the trial court did not err in admitting in evidence the record of the brand of David Middleton, (1) because the record of said brand failed to state on what part of the animal the brand was placed; (2) because the brand recorded showed that David Middleton was using and claiming more than one brand. We will discuss the ground first, alleging that he erred in admitting the brand because it was not stated in the record on what part of the animal the brand was placed. We must first remember that under the general rules of evidence, that an animal was branded in a given brand and that a named person was the owner of that brand, is admissible in evidence unless prohibited by statute. It does not take a statute to make brands and marks on animals admissible in evidence—they are so by virtue of the rules governing evidence, and it has been held that cattle branded with the brand of the prosecuting witness is some evidence of his ownership. Underhill on Crim. Ev., 297; State v. Wolfley, 75 Kan., 406; People v.

Romero, 107 Pac. Rep., 709. And it has also been held that the State may prove that an unrecorded brand was used for years by the party claiming ownership. (Underhill, section 297; 91 Pac. Rep., 731.) And if brands and marks are admissible in the absence of a statute, then those provisions of the law of 1874 and 1876, which render inadmissible records of a brand unless the record shows on what part of the animal the brand is placed, has no application to those counties not under the operation of that law, and it is unquestioned that this law is not now and has not been in force in Liberty County since 1879, when this case was tried in 1911. It being admitted that the statute referred to has not been in force in Liberty County for the past thirty years, we do not see what force and effect it could have in the trial of a case in Liberty County. Its provisions are applicable alone to those counties in which the provisions of the inspection law of 1874 and 1876 are in effect. This Act of 1874 was first passed on, so far as we have been able to ascertain, in the case of Beyman v. Black, 47 Texas, 558, and it was held constitutional but applicable alone to the counties not exempted therefrom, and as at the time of its passage Liberty County was exempted, it did not become effective in that county in March, 1874.

We do not think that the Act of April 28, 1874, wherein it was attempted to place Liberty County under the provisions of the Act of March 3d can by any construction be termed a repealing statute, and, therefore, deem it unnecessary to discuss the authorities cited by appellant showing that the Legislature has the right to repeal without republishing the entire section or law, for that is certainly the law. This was not undertaken to repeal the law or any portion thereof where it was in force, but to put the law in force where it had not theretofore been in force, and in consequence would be an amendment to the law.

In appellant's motion for a new trial he calls our attention to other Acts of the Fourteenth Legislature, claiming that these put Liberty County under the operation of the Act of March, 1874, and this is probably true. Without discussing these Acts, it is clear that the Acts of the Sixteenth Legislature, in chapter 30, passed April 22, 1879, exempted Liberty County from the operation of the law, and that it has been exempt ever since, and was exempt at the date of this trial. It is also manifest that if the brand was not properly recorded in 1875, that by the Act of August 26, 1876, chapter CLXV, sections 22 and 23, the record was rendered valid, for by it, it was provided:

"Section 22. No person owning and claiming stock shall, in original marking and branding animals, make use of more than one mark and brand; provided, that any person may own and possess animals in many marks and brands, the same having been by him acquired by purchase, and bills of sale in writing, properly acknowledged from the previous owner or owners, or his or their legally constituted agent, shall be sufficient evidence of such purchase; but the increase of such

animals, or of any animals counter branded by such person from other stocks of cattle owned by him, and all animals so counter branded, shall be branded or counter branded by one and the same brand; and when marked by such person, shall be marked in one and the same mark.

"Section 23. The clerk of the County Court in each county shall *transcribe the list of all recorded marks and brands in his county, and revise the same.* Such revised list shall be written in a well bound book, kept for that purpose only, and shall be arranged as follows, viz.: All brands of the letter class shall be placed in alphabetical order, following which shall be the numeral, character and device brands, in the order of the date of their registration. Opposite each brand shall be stated the marks corresponding to said brand, the name of the owner of the brand, his place of residence; if the same be sold, the name of the person to whom sold and his residence, the date of registration of the brands and marks, or particulars relating thereto. Before each brand shall be placed its number, commencing at one for the first brand on the revised list; and the name of the owner of each brand shall be indexed, reference being had in such index to the list number of the brand or brands of such owner; and all new marks and brands placed on record shall be immediately recorded and indexed in said book, which shall at all times be open to the inspection of all persons; provided, that the provisions of this section shall apply only to counties in which the work of transcribing the records has not already been done in accordance with law."

There is no provision that the "part of the animal on which brand is placed" shall be transcribed, and thirty-four years after that time, in the absence of any proof to the contrary, we must presume that the clerk complied with this law; and the reason why it appears that David Middleton had more than one brand appear of record is because of purchases made by him. And the fact that more than one brand does appear is evidence of nothing more than he had perhaps purchased certain marks and brands. The evidence conclusively shows that in originally marking and branding he used only the 丬ٲ brand, and has done so continually since that date. And if this record introduced is the transcribed record provided for by this article of the statute, it would properly be of record, and being legally of record, when Liberty County was exempted from the operation of what was known as the inspection laws of 1874 and 1876, by Act of the Legislature in 1879, the provisions of those laws requiring that brand record should show on what part of the animal the brand was placed, to be admissible in testimony as evidence of ownership, was and is no longer in force in that county, and the evidence in this case was admissible, as the theft was alleged to have occurred and the trial had about thirty years after Liberty County was exempted from the operation of those laws. Stock laws, like our prohibitory laws, are only in force in those counties where it is so provided by law.

As to the second clause, that David Middleton had more than one

brand of record, it need not be discussed, as section 22 of the Act herein above copied authorized it when one purchased cattle; the only limitation was that in originally marking and branding a person should not use more than one brand. A. D. Middleton testified that his father had purchased several brands, but that he never did use but one in originally branding cattle and that was the ⏝ brand. There is no evidence in this case that David Middleton or A. D. Middleton ever used more than one brand in originally branding their cattle; and, therefore, we do not deem it necessary to discuss those cases where more than one brand was shown to have been used in originally branding cattle.

The other questions raised in appellant's motion for rehearing were so thoroughly discussed in the original opinion we do not deem it necessary to do so again, but only add where a person is on trial and proof that he has been or is charged with other offenses is admitted, it is the better practice to instruct the jury as to the purposes for which it was admitted, but if it is not done, then the question arises: was the testimony such that could have been used for any other purpose than as it might affect the credibility of the witness, and if not, a failure to so charge will not present reversible error. In this case the court limited the consideration of the jury alone to whether or not the defendant was guilty of the theft of the black beef steer described by the witnesses, and under such circumstances the failure to limit the testimony would not present reversible error. Moseley v. State, 36 Texas Crim. Rep., 581, and Carroll v. State, 58 S. W. Rep., 340.

The motion for rehearing is overruled.

*Overruled.*