WILLIAM JERROLS v. THE STATE.

No. 4425.   Decided April 4, 1917.

**Theft—Sufficiency of the Evidence—Circumstantial Evidence.**

Where, upon trial of theft of cotton seed, the evidence was largely circumstantial, but supported the conviction under a proper charge of the court, there was no reversible error.   Following Dugat v. State, 67 Texas Crim. Rep., 46, and other cases.

Appeal from the District Court of Austin.   Tried below before the Hon. Frank S. Roberts.

Appeal from a conviction of theft of cotton seed over the value of fifty dollars; penalty, four years imprisonment in the penitentiary.

The opinion states the case.

*C. Douglas Duncan,* for appellant.

*E. B. Hendricks,* Assistant Attorney General, for the State.—On question of identity of stolen property: Hooton v. State, 53 Texas Crim. Rep., 6; Lynne v. State, 53 id., 375; Bagley v. State, 3 Texas Crim. App., 163; Polin v. State, 65 S. W. Rep., 183; Suggs v. State, 65 Texas Crim. Rep., 67, 143 S. W. Rep., 186.

MORROW, JUDGE.—This was a prosecution by indictment for theft with a judgment condemning the appellant to confinement in the State penitentiary for a term of four years.

The only question for review is the sufficiency of the evidence.   The conviction was for the theft of seed cotton.   The owner of the property had a wagon standing in his field in which he claimed to have placed 1300 pounds of seed cotton; two rains had fallen on it, and it had been standing in the field some days, and the wagon and the cotton were taken from the owner's field in the night-time.   The next day cotton which weighed 1038 pounds was found in an outhouse on the farm occupied by appellant and identified by the owner as being the same which he had in his wagon.   The wagon was found near a neighbor's house some distance from that of appellant.   The tracks of the wagon were traced from the field where the owner left it to the outhouse on appellant's place.   The wagon tracks were not identified by any peculiarity except that the impression made by the tires showed that it was not a new wagon.   There was evidence that along the route traveled there were bits of cotton such as would fall off by the jolting of the wagon while in motion.   The ground immediately in front of appellant's outhouse where the cotton was found had been wet by pouring water on it, obliterating the tracks.   The wagon was also traced by its tracks out away from appellant's premises in the direction of the place where the wagon was found the next morning after the theft.   Appellant's team consisted of two medium sized mules, and the tracks of the team drawing the wagon were described as having been made by

mules of that character. At the place where the owner left his wagon and cotton there were found tracks on the ground made by a shoe with a rubber bottom having checks such as are on rubber or tennis shoes. These tracks were measured and the measurement compared with the track admittedly made by appellant the next day after the theft and found to be of the same size as appellant's track. Appellant was found wearing tennis shoes, the bottoms of which had checks on them like those found in the owner's field near the place from which his wagon was taken. Appellant worked the day before in a neighboring field wearing the same shoes, and his tracks there made also measured and the measurement shown to correspond with his track and those found in the field of the owner of the cotton at the place where his wagon stood. While the owner was picking cotton he had an old, torn quilt which was used by his children in playing about and under the wagon, and which was on the cotton at the time it was stolen. Among the cotton found in appellant's possession were small pieces of cloth like that of the quilt, and which the owner identified as being part of the cloth from the quilt. The cotton found in appellant's possession was quite wet, some of it mildewed and about to sprout. Appellant lived on a rented farm, and his landlord testified that appellant had sold all of the cotton that he had any knowledge of his gathering and all that was on the place within his knowledge except a few hundred pounds of scrap cotton ungathered. Appellant accounted for the possession of the cotton by the testimony of his mother to the effect that she had furnished the seed and some of the labor for planting a part of the cotton on the land rented by appellant, and that the cotton found in appellant's possession was her cotton. She was corroborated to the extent that she had bought seed in the spring, and children from her household testified that they gathered the cotton during the fall and put it in the house where the cotton in question was found. Their testimony showed that they had gathered this cotton at various times during the fall prior to September 20th, the date of the theft    Appellant accounted for the fact that the cotton in his possession was wet and sprouting by his testimony that the house in which it was stored leaked. This was contradicted by his landlord, owner of the house, who also testified that he had no knowledge of appellant's mother having any cotton on his farm; that if she had any he would own an interest in it, and had received no information or notice that it was there. He also testified that the appellant in picking the cotton which he had sold had picked it from all over the field, including the land claimed by appellant's mother.

Appellant insists that the identity of the cotton in his possession was not sufficiently established. The case was fairly submitted to the jury, including a charge upon circumstantial evidence of which there is no complaint, and, in our judgment, the evidence taken as a whole is sufficient to support the conviction. Berry v. State, 37 Texas Crim. Rep., 44; Foster v. State, 56 S. W. Rep., 58; Richards v. State, 59

Texas Crim. Rep., 203; Davis v. State, 63 Texas Crim. Rep., 453; Dugat v. State, 67 Texas Crim. Rep., 46, 148 S. W. Rep., 789.

The judgment of the lower court is, therefore, affirmed.

*Affirmed.*