RAY WAKEFIELD v. THE STATE.

No. 8845. Delivered December 10, 1924.

No motion for rehearing filed.

**Transporting Intoxicating Liquor—Charge of Court—Other Offense—Should Limit.**

On cross-examination of appellant, it was elicited from him that within the last two years, he had been arrested twice upon charges in the Federal Court, for possessing intoxicating liquor. Appellant requested a special instruction telling the jury that such charges could not be considered by them, as a circumstance of his guilt in this case. This charge should have been given. See Bennett v. State, 43 Tex. Crim. Rep., 241, and cases cited.

Appeal from the Criminal District Court of Tarrant County. Tried below before the Hon. Geo. E. Hosey, Judge.

Appeal from a conviction for transporting intoxicating liquor, penalty one year in penitentiary.

*Phillips, Brown & Morris,* for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

HAWKINS, Judge.—Appellant was placed upon trial under an indictment which in various counts charged (a) the sale of intoxicating liquor to one Stegall, (b) the possession of intoxicating liquor for the purpose of sale, (c) the manufacture of intoxicating liquor, and (d) the transportation thereof. All of the counts save that charging "manufacture" were submitted to the jury. Conviction was for "transportation," with punishment assessed at confinement in the penitentiary for one year.

Because of delay in filing the statement of facts and bills of exception the right to consider them is questioned by the state. From the showing made we are satisfied the delay was not the result of any negligence on the part of appellant or his attorneys, and believe the statement of facts and bills of exception should be considered.

Appellant was engaged in the cold drink and lunch business. Stegall had been acquainted with him some three or four years. This witness testified that on November 7th he was in appellant's place of business and expressed a desire to get some whiskey for Christmas; that appellant said he thought he could get some and that a gallon would probably cost about $10. This was in the morning about nine o'clock. Witness told appellant he would not have the ten dollars until four or five o'clock in the afternoon, which seems to have been satisfactory to appellant; witness also told him he would be back about noon. He was delayed and did not get back until about one o'clock. At this time he saw appellant in his place of business and upon asking appellant "how he was fixed" the latter said "all right." Witness walked out being followed by appellant who disappeared from witness' sight while the latter was getting in his car. Some ten minutes later witness saw appellant on the sidewalk in front of his place of business. Stegall disclaims having seen appellant or anyone else place the liquor in his car. Charlie Johnson, a negro, was an employee in Pollard's place of business adjoining that of appellant, testified that appellant came into the wrapping room of the Pollard store bringing a package and requested witness to wrap it up and put it in Stegall's car; that he wrapped up the package, took it outside and passed it to someone, but Johnson claims not to know whether he handed it to appellant or Stegall. Witness said he had no knowledge of the contents of the package, and did not know whether appellant brought it in Pollard's with him or whether he picked it up from behind some boxes after he came into the store. The officers testified that they saw a Ford sedan in front of appellant's place of business, saw a negro coming up to the sedan with a package, saw the negro hand it to appellant, and saw appellant put it in the car; that they ran up and secured the package which was whisky. Appellant testified that Stegall came to his place of business and asked if appellant knew where some whisky could be obtained; that appellant told him he was not positive and asked how

much Stegall wanted to which he replied "a gallon;" that he asked Stegall where he wanted it delivered; that Stegall said it would be all right to bring it to his (Stegall's) house; that appellant told him at the time that it could not be delivered at his (appellant's) place of business; that other parties were present who agreed to take different quantities of whisky, aggregating five gallons; that Pollard was to take two gallons of the five; that appellant found a negro who said he could get the whisky; that the negro came and asked where he should deliver it; that appellant called Stegall over the phone to know if the negro should take Stegall's whisky to the latter's house, but in the meantime the negro brought the whisky to appellant's place; that appellant told him he could not bring the whisky in there and directed him to set it in the hall in Pollard's business place; that when Stegall came appellant told him he would have the whisky brought out; that he went in and told the negro who worked for Pollard to wrap up the two jars, which were then wrapped in a newspaper, and put them in Stegall's car; that the negro did wrap it up and placed it in Stegall's car, and about that time the officers arrived and took charge of the whisky. Appellant denied handling the whisky in any way or having put it in the car, or that he had any connection with it further than as stated by him. He admits that he told the negro who brought the whisky that he (appellant) would guarantee that he got the money from the people who were taking it as he knew they were all right.

Five bills of exception appear in the record. The only point briefed for appellant is raised by the third bill, and this one only will be considered. We think the others present no error. Upon cross-examination of appellant it was elicited from him that within the last two years he had been arrested twice upon charges in the Federal Court for possessing intoxicating liquor. Appellant requested a special instruction telling the jury that such charges could not be considered by them as a circumstance of his guilt in this case. It was refused and exception properly reserved.

We can see no good reason for the court declining to limit this testimony. Where a defendant becomes a witness in his own behalf and proof is made that he had been or is then charged with other offenses it is the better practice always to limit the testimony to the purpose for which it is admitted. Dugat v. State, 67 Texas Crim. Rep., 46, 148 S. W. 789. The necessity for such instruction does not ordinarily arise where a witness other than defendant is so attacked for in such case proof that a witness has been charged or convicted of other offenses cannot be appropriated by the jury upon the issue of the defendant's guilt. Many cases exemplifying this will be found collated under Section 180, Branch's Ann. P. C. There are some cases too where the defendant is shown to have been charged with an offense so dissimilar in character to the one on trial that it

would be impossible for the jury to appropriate it for any but impeachment purposes and in such cases the failure to limit it has been held not reversible. (For illustration, see Carroll v. State, —— Texas Crim. Rep., ——, 58 S. W. 340, and cases therein cited.) In Dugat's case (supra), Judge Harper, after calling attention to the conflicting opinions of the court upon the subject says:

"In fact, after a thorough discussion of this question the rule finally adopted seems to be tersely stated in Branch's Crim. Law, section 873, where it is held, 'if the testimony can only be used to impeach a witness it is not necessary to charge on the subject at all, * * *' " and this appears to be as fair a statement of the rule as we are aware of. The trouble comes in applying it. In Bennett v. State, 43 Texas Crim. Rep., 241, accused was on trial for murder. It was shown that he had been indicted for horse theft, cattle theft and train robbery. The purpose of admitting proof of these various offenses was not explained to the jury. This court discussing such omission says:

"But, without an instruction on the subject, would the jury confine their consideration of said testimony to that purpose alone? Would they know the object of its introduction? It must be remembered that juries are, for the most part, unacquainted with the rules of law; and therefore the necessity on the part of the court to instruct them with reference to their duties. Of course, if they knew this was impeaching testimony, or if it could be appropriated by them to no other purpose than to discredit appellant, the failure to instruct in regard thereto would not prove prejudicial to appellant. But it must be remembered that this was a case of circumstantial evidence, in which many facts, not otherwise admissible, are introduced for the purpose of bearing on or tending to show appellant's guilt; and very naturally the jury would be prone to consider the fact or circumstance tending to show appellant was a man of bad character,—as that he had been accused of theft of cattle and horses and train robbery, and had been indicted therefor,—and it would tend to make them believe appellant was of such a character as would assassinate a woman. Not being informed of the purpose of the introduction of this sort of testimony, we take it they would more likely consider it for the purpose above indicated than for the impeachment of appellant as a witness. At any rate the possibility that they might do so, in the absence of a charge directing their attention to the testimony, and limiting the consideration of it to the impeachment of appellant as a witness, would constitute reversible error."

Applying the reasoning of the court just quoted to the present case we find ourselves unable to say that the evidence which appellant sought to have limited could only have been used by the jury to discredit appellant, as a witness. Not being informed of its purpose they may have concluded that former charges for unlawful whis-

ky transactions were indicative of criminal connection with the one then under investigation. Such would have been the natural conclusion in the absence of direct information through appropriate instructions.

The refusal of the requested charge under the facts before us calls for a reversal, and it is so ordered. .

*Reversed.*

