ROSETTA HARRIS v. THE STATE.

No. 3153. Decided November 15, 1905.

**1.—Murder in Second Degree—Manslaughter.**

On a trial for murder where the evidence showed a previous difficulty and that at the time of the homicide deceased made an attack upon defendant with a knife and began cutting at her and abusing her, whereupon defendant fired three shots at deceased and was very much excited and frightened at the time of the shooting, the court should have charged manslaughter, and its omission was error.

**2.—Same—Self-Defense—Reasonable Doubt.**

On a trial for murder, it was error on part of the court in failing to instruct the jury in regard to the reasonable doubt in connection with threatened danger to life, etc., as defendant was entitled to the benefit of the doubt upon all issues where guilt is sought to be proved.

**3.—Same—Race Discrimination—Practice.**

Where the matter with reference to race discrimination, appellant being a negro woman, was not brought up before the trial court until after conviction, it was too late to be considered.

Appeal from the Criminal District Court of Harris. Tried below before Hon. J. K. P. Gillaspie.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Stanley Thompson,* for appellant.—On question of manslaughter: Swain v. State, 12 Texas Ct. Rep., 812; Howard v. State, 23 Texas Crim. App., 265; Bonner v. State, 29 Texas Crim. App., 223; Neyland v. State, 13 Texas Crim. App., 536; Rutherford v. State, 13 Texas Crim. App., 92; Hobbs v. State, 16 Texas Crim. App., 517; McLaughlin v. State, 10 Texas Crim. App., 340.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—This conviction is for murder in the second degree, with five years in the penitentiary fixed as the penalty.

Appellant urges reversal upon the ground that the court failed to charge upon the law of manslaughter. Omitting the State's side of the case, we find, appellant shows that on the morning previous to the difficulty in the evening, at the residence of deceased, where appellant was a roomer or boarder, there came up a difficulty between them in regard to some alleged slanderous remarks. Deceased cursed and abused appellant, and called her many and various kinds of hard names, and ordered her out of the house. She got ready to leave, and prosecutrix came on her with a knife, and undertook to cut her, and was prevented by appellant's mother and witness Browning. She cut at appellant over her mother's shoulder, cut a hole in her skirt near the waist. When Browning threw up his hand to protect her from the assault of deceased, she cut him in the arm. She also cut at the mother of appellant, and Browning prevented deceased from cutting her. As appellant went out of the yard, deceased threw a spittoon, brick-bat and a rock at her, and remarked to the mother of appellant: "Yes, you damn old bitch, you can take her (meaning appellant) but you can't keep her in a band box, and the first time her a— hits the street she is my meat: I will put up five years for her." During the quarrel in the house, she threatened to kill appellant; and appellant testifies she would have done so, but for the interference of Browning and her mother. This all occurred about 9 or 10 o'clock in the morning. Subsequently, during the same day, and prior to the second trouble, which occurred about 2 o'clock, appellant bought a pistol, as she says, for the purpose of defending herself against the threatened attack of deceased. Returning from town, she stopped at the residence of a friend, whom she calls, "Susie," and just as she walked out of the gate of her friend, she noticed deceased and two or three other women coming up the street. As soon as appellant recognized whom they were, and that deceased was one of them, "she started to walk diagonally across the street." When she had reached the middle of the street, deceased said, "Now, I've got you, you bitch," opened her handbag, got out her knife, and started after defendant, who backed away, telling her to stand back. Deceased paid no attention to what appellant said, but came right on, and began cutting at appellant with a knife. Appellant continued stepping backward, telling her again to stand back. Deceased again approached with the drawn knife, and appellant began shooting. Deceased continued to advance, and appellant fired three shots. She was very much excited and frightened at the time of the shooting; was afraid of deceased, and considered her a dangerous woman, and thought she was going to kill her. This may be considered, in substance, the defendant's side of the trouble. We believe under this testimony a charge on manslaughter should have been given, and its omission was error.

The charge on self-defense is criticised because it failed to instruct the jury in regard to the reasonable doubt in connection with threatened danger to life, when viewed from the standpoint of defendant. Upon another trial, the court should include this phase of the law. Defendant is entitled to the benefit of the doubt upon all issues where guilt is sought to be proved. The State's evidence shows murder in the second degree. Appellant was entitled to the law of reasonable doubt on the facts made by the conflict in the evidence.

There is a question raised on the motion for new trial with reference to race discrimination, appellant being a negro woman. This matter was not brought up before the trial court, until after conviction. This is too late.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*