GEORGE ELLIOTT v. THE STATE.

No. 7051.    Decided October 25, 1922.

Rehearing denied October 3, 1923.

1.—Theft of Cattle—Venue—Charge of Court.

Where the venue was alleged in Grayson County, Texas, and the defense was that the cattle were either taken in Cook County, Texas, or in Oklahoma, and the court submitted this issue to the jury in the proper manner, there was no error in refusing the requested charges on venue, as they were not the law applicable to the facts.

2.—Same—Sufficiency of the Evidence—Requested Charge.

Where, upon trial of theft of cattle, the evidence supported the conviction there was no error in refusing a requested charge for acquittal.

3.—Same—Charge of Court—Animal Running on Range—Possession.

Where, upon trial of theft of cattle, there was some testimony that the alleged animal ran at large for some time, there was no error in refusing

the charge, if the animal ran at large in Texas for four or five months and was not in actual possession of the alleged owner, the jury should acquit; as the law is that an animal on the range or commons is in the possession of its owner, if he be the last person exercising care, control and management of said animal before it is taken.

#### 4.—Same—Evidence—Customs—Stray Animal.

Proof of a custom to castrate stray animals that were interfering with the herd of blooded stock would not seem to be material under the facts of this case, and there was no error in excluding such testimony.

#### 5.—Same—Rehearing—Venue—Indictment—Charge of Court.

Where the indictment charged theft of one head of cattle in Grayson County, Texas, and contained no allegation that the theft of the animal took place in the State of Oklahoma and was brought into Texas, and the court charged the jury that if they found and believed from the evidence, beyond a reasonable doubt, that the defendant stole the animal in question, but had a reasonable doubt whether he stole it in Texas or Oklahoma they would acquit, there was no reversible error.

#### 6.—Same—Defensive Theory—Charge of Court—Rule Stated.

When evidence presents an affirmative defensive issue, it is incumbent upon the court upon timely request to embrace in his charge the defensive theory raised in the evidence. However, in the instant case there was no such affirmative testimony, and where the language of the charge was so framed that if the jury entertained a reasonable doubt as to whether defendant stole the animal in Oklahoma an acquittal should follow, this was all the facts demanded. Following Carter v. State, 56 Texas Crim. Rep., 305, and other cases.

Appeal from the District Court of Grayson. Tried below before the Honorable F. E. Wilcox.

Appeal from a conviction of theft of cattle; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Culp & Culp* and *J. P. Cox* for appellant. Cited, cases in opinion.

*R. G. Storey*, Assistant Attorney General, for the State.

LATTIMORE, Judge.—Appellant was convicted in the District Court of Grayson County of theft of cattle, and his punishment fixed at confinement in the penitentiary for two years.

It was alleged that the theft took place in Grayson County, Texas. The defense seems, in part at least, to have been that if the theft was committed by appellant, but the animal in question was taken in Cooke County, Texas, or in Oklahoma, or if the jury should so conclude, he should be acquitted. Special charges were asked and refused as follows:

"Unless you believe from the evidence in this case beyond a reasonable doubt that the animal in question was not stolen in the State

of Oklahoma, you can not convict this defendant.''

And also:

''In this case unless the evidence shows beyond a reasonable doubt that the defendant stole the animal in question in Grayson County, Texas, from T. J. Ballard you will acquit him.''

And likewise:

''In this case if you find and believe from the evidence that the defendant first took possession of the said animal in question in Cooke County, Texas and the State has failed to establish that he formed the design of stealing said animal after he had brought said animal in Grayson County, you will acquit the defendant.''

and also:

''In this case unless you believe from the evidence beyond a reasonable doubt that the animal in question strayed away from the said T. J. Ballard in the State of Oklahoma you will acquit the defendant.''

These charges were correctly refused. Neither of them presented the law of the facts in testimony. We notice these chargs in the order they are above set out.

The first is not the law for the reason that if the animal in question had been stolen in Oklahoma,—by appellant,—and brought into Grayson County, Texas, this prosecution could be maintained in said county. This is true of the facts referred to in the second charge set out. It was not necessary to the conclusion of guilt, that the animal be originally stolen in Grayson County, Texas. Article 234 of our Code of Criminal Procedure provides that for offenses committed wholly or in part without this State, prosecutions will lie in any county in which the offender is found. McKinzie v. State, 32 Texas Crim. Rep. 568. Article 245 of said C. C. P., sets forth that for the offense of theft a prosecution may be had either in the county of the original taking or in any county through or into which the stolen property may be taken. Shubert v. State, 20 Texas Crim. App. 320; Clark v. State, 23 Texas Crim. App. 612; Rogers v. State, 69 Texas Crim. Rep., 84, 153 S. W. Rep. 856. These cases illustrate the principle embodied in the statute. In Dugat v. State, 67 Texas Crim. Rep., 46, 148 S. W. Rep. 789, we said that where the accused had stolen cattle in his pasture in one county, it was immaterial in a prosecution in that county whether the cattle were taken in another county or not.

This also disposes of the third special charge above set out. The design to steal said animal may have been formed when appellant took possession of it in Cooke County, but this would not operate to prevent a prosecution for the theft in any county in which he may thereafter have taken it; nor would such situation require that he form a new intent to steal in each county into which he may have taken the animal. Nor could it be legally true from any standpoint that the animal in question must have strayed away from its owner

in Oklahoma before appellant could be convicted for its theft in Grayson County, Texas. As above observed, it may have been taken by appellant in Oklahoma and by him brought into Grayson County, and this as a matter of law would justify this prosecution.

As to the facts deduced from the testimony in this case, there seems no room for doubt of any kind but that the animal in question did cross from the pasture of Mr. Ballard, his owner, on the north bank of Red River, to the Texas side. Mr. Ballard said there was no fence on the south side of his pasture and that Red River was its south boundary, and that the bull in question disappeared from said pasture in April, 1921. Mr. Sisson, a citizen of Cooke County, Texas, whose home was on the south bank of Red River and apparently across from the pasture of Mr. Ballard, testified that one morning in the spring of 1921 he saw a red two year old Durham bull branded R on the left hip come up on the north side of witness' house; water was dripping from the bull at the time. The description thus given of the bull is the description of Mr. Ballard's bull. The animal stayed around Mr. Sisson's premises for about three weeks and suddenly disappeared. This was in April, 1921. Witness has since seen the animal in Oklahoma and states that it has been castrated since it was at his premises as above set out.

Another witness, a Mr. Waters, who lived in Cooke County some four or five miles from Red River, testified that appellant brought a red Durham bull which looked to be about two years old to witness' house and asked permission to leave him there for a week or ten days, and that appellant did so leave him, and came at the end of that time and got him and drove him away in a northwesterly direction. When appellant left with the bull he went in the direction of the Elliott pasture which is in Grayson County, which is about two and a half or three miles from where witness lived. It was also in testimony that in the spring of 1921 appellant, aided by two of the State witnesses, castrated a two year old red Durham bull which he had just driven into the Elliott pasture in Grayson County, and that afterward appellant had the animal dipped. A witness who helped dip him said he was branded R on the left hip, and that he heard appellant try to trade the animal to Vernon Butts; that appellant said to Butts; "Let me swap you that bull." This same witness overheard appellant offer to sell the bull to Mr. Butler, and stated, when the offer was made, that Butler asked which bull appellant was talking about and appellant pointed out the red Durham bull two years old branded R on the left hip, which was the same bull afterwards claimed by Mr. Ballard. Mr. Butler swore that at a dipping vat in Grayson County where the bull in question was being dipped, appellant wanted to sell the animal to him and pointed out the bull which was afterward identified and taken from the Elliott pasture by Mr. Ballard. Butler

testified that he went with Ballard to the Elliott pasture in August when the animal was retaken by the owner. Butler said the animal at that time was a steer.

For the defense a number of witnesses swore that they saw a red bull, apparently the one in question in this case, ranging around near Red River in Cooke County, Texas, in the spring of 1921 for several weeks. Appellant for himself testified that the first time he saw the bull it was in a pasture in Cooke County belonging to the Elliott estate, and that he drove him out and drove him to Mr. Waters' place where he left him for ten or fifteen days, and that he then drove him over to a Grayson County pasture belonging to his family "with our other bunch." That a little later he castrated the bull to keep him from mixing with his other cattle. He said he had no intention of appropriating the animal. On cross-examination appellant said that his idea in taking the animal from Cooke County over into Grayson County was "so that people could see him over there in Grayson County." There was considerable testimony *pro* and *con* as to appellant's reputation for being a law-abiding citizen. He admitted he had been indicted for cattle theft, and was under indictment at the time of his trial for manufacturing liquor.

The court did not err in refusing appellant's request for an instructed verdict in his faxor. From the State's testimony he drove the animal in April, or in the early spring, to Waters' house about the time that it disappeared from Sisson's place. From Waters' house he drove it toward the pasture of his mother. He put it in said pasture. He castrated it and tried to trade it to Butts and sell it to Butler. These facts if believed by the jury would support a conviction for theft of the bull.

Appellant asked a charge that if the bull ran at large in Texas for four or five months and was not in possession of Mr. Ballard, the jury should acquit. We think the charge not to be the law applicable. In Griffin v. State, 87 Texas Crim. Rep., 194, 220 S. W. Rep. 330, we said:

"The hog was shown by the state's testimony to have been in the care, control and management of the alleged owner, and on his range up to a comparatively short time before the alleged theft, and to have recently before said taking wandered a few miles from the home of the said owner. Unless possession of some one other than the real owner be shown in some way in such case, we think it proper to allege ownership and possession in such real owner, if known. It is held in a number of cases that live stock cannot of their own volition change owners. Alford v. State, 31 Tex. Crim. Rep., 299, 20 S. W. 553; Denton v. State, 69 S. W. 142; Taylor v. State, 75 S. W. 35. That the owner is out of the state when the property is stolen will not change the possession from him, if he did not leave said property in the care, control and management of another, or if the actual care, control and management of another has not supervened. Webb v.

State, 44 S. W. 498; Parks v. State, 89 S. W. 1064. We are of opinion that an animal on the range or commons is in the possession of its owner, if such owner be the last person exercising care, control and management of said animal before same is taken.''

We think this to be a statement of the law applicable to the facts in the instant case so far as is necessary to state same in disposing of the special charge under discussion.

Appellant sought to ask certain witnesses the following question: ''Where a stray bull gets into the herd of full blood cattle, do you know what the custom among stockmen in the community where you reside is in reference to whether or not they castrate said stray animal?'' An exception was reserved to the court's refusal to allow such question. We do not think the other evidence in this case such as to make pertinent the inquiry just set out. The bull referred to was running with Sisson's cattle near Red River seemingly in no situation and showing no disposition to interfere with appellant's cattle. He disappeared. He seems to have next been seen in possession of appellant who drove him up to Waters' house and left him for ten or fifteen days. From there appellant admits he drove him to his pasture, or that of his family, some two and a half or three miles over in Grayson county. Before turning him loose in said pasture he castrated the animal. He did not castrate him when he saw him over in Cooke County; nor did he castrate him at the time he drove him down to Waters' house where he left him as above stated. Why did not appellant leave him at Waters' place permanently? Why did he come and drive the bull over into Grayson County and put him in his pasture, if he desired simply to prevent his mixing with his own cattle? Proof of a custom to castrate stray animals that were interfering with herds of blooded stock would not seem to be material under the facts of this case. There was no claim of any effort of appellant at any time or in any other manner to rid himself of the bull. All the tracks appearing in this record led the bull toward the control and possession of appellant and none away from it. Nor do we think the court erred in refusing to allow appellant to interrogate the jury as to whether they would acquit appellant upon proof of the fact that he castrated the bull even though they doubted whether he intended to sell it. If questions of this character were permissible, each fact in a chain of circumstances might be gone over and the jury interrogated as to their willingness to convict on proof of that individual fact, even though they might not believe from the other evidence in the case in the guilt of the accused. Such we do not believe to be correct practice.

We have carefully gone over the various contentions of appellant, and finding ourselves unable to believe that he has not been fairly tried or that the law has not been followed, an affirmance is ordered.

*Affirmed.*

ON REHEARING.

October 3, 1923.

MORROW, PRESIDING JUDGE.—In upholding the action of the trial court in refusing the special charges set out in the original opinion, appellant insists that we were in error.

His contention is to the effect that if the animal was stolen by the appellant in the State of Oklahoma and afterwards brought by him into the State of Texas, the prosecution could not be maintained under the indictment upon which the conviction rests. It was not intended that the original opinion should deny the correctness of this proposition. On the contrary, the position is deemed sound.

Article 234 of the Code of Crim. Proc., reads thus:

"Prosecutions for offenses committed wholly or in part without, and made punishable by law within, this state, may be commenced and carried on in any county in which the offender is found."

This is a general provision of the statute of long standing, but Article 1431 and 1432 of the Penal Code deal specially with the offense of bringing stolen property into the state.

In Article 1431 of the Penal Code, it is declared that "if any person having committed an offense in any state, which if committed in this state, would have been theft, shall bring into this state any property so acquired, he shall be deemed guilty of theft and shall be punished as if the offense was committed in this state." It is also said that the offense may be charged to have been committed in any county act constituting such offense had taken place wholly within this state. in which the property may be brought, in the same manner as if the

Article 1432 of the Penal Code touching the same subject, reads thus:

"To render a person guilty under the preceding article, it must appear that by the law of the foreign country, state or territory from which the property was taken and brought to this State, the act committed would have been . . . theft."

The essential requisites of an indictment charging the offense of bringing stolen property into the State were considered by the Supreme Court of this state in the case of State. v. Morales, 21 Texas 298. In that case the trial court held the indictment bad. The State appealed. The Supreme Court disposed of the appeal with this comment:

"The law of the foreign state becomes a necessary element in proving the guilt of the accused; and it ought, therefore, to be averred. The indictment should have averred that the stealing, taking, and carrying away, was, by the law of said state of Tamaulipas, criminal, and that it was theft."

See also Vernon's Tex. Crim. Stat., Vol. 1, p. 921, and cases listed.

In the case under consideration, the indictment simply charged the theft of one head of cattle in Grayson County. It contains no count charging the theft of the animal in Oklahoma and its bringing into Texas. In the absence of such an averment, the conviction for bringing the stolen property into the state could not be had. This the learned trial judge recognized and embraced in his charge a paragraph in these words:

"If you should find and believe from the evidence beyond a reasonable doubt that defendant stole the animal in question, but you have a reasonable doubt whether he stole the animal in Texas or Oklahoma, you will acquit the defendant."

Ballard, the owner of the Durham bull in question, resided in the State of Oklahoma. His pasture was on the river front and was separated from the state of Texas by the Red River. Ballard missed the animal, which was afterwards found in possession of the appellant in the Elliott pasture in Grayson County. The bull after it disappeared had been castrated and marked. It was seen in Cooke County, Texas, coming unattended to the premises of a witness. When first seen, the animal was on the Texas side of the bank, about seventy-five feet from the Red River. Water was dripping from it at the time. It remained near the premises of the witness for a while and later disappeared. The Elliott family had pastures in Texas in both Cooke and Grayson Counties. According to appellant's testimony, he first saw the animal in the Elliott pasture in Cooke County, and he took it to the Elliott pasture in Grayson County. He described the animal as a stray bull; and said that he did not want it in his pasture; that he dipped the bull and altered it.

There is a well-established rule of law that when the evidence presents an affirmative defensive issue, it is incumbent upon the court, upon timely request, to embrace in his charge an instruction upon the defensive theory raised by the evidence. White v. State, 18 Texas Crim. App. 57; Rose's Notes on Tex. Rep., Vol. 5, p. 447. When, however, as in the instant case, there is no such affirmative testimony, but a mere theory that the State has failed to prove that the animal was not taken into appellant's possession in the State of Oklahoma, the language used by the trial judge in informing the jury that if there was entertained by them a reasonable doubt as to whether appellant stole the animal in Oklahoma, an acquittal should follow, was, in the judgment of this court, all that the occasion demanded. The nature of the evidence was negative and simply such as might have left the jury in doubt touching the beginning of appellant's connection with or possession of the stolen animal. Similar language has often been held sufficient to present the theory of alibi where the evidence touching that issue was of a nature similar to that in the present

case. See Walker v. State, 6 Texas Crim. App. 577; Gallaher v. State, 28 Texas Crim. App. 247; Rollins v. State, 83 Texas Crim. Rep. 343; Carter v. State, 56 Texas Crim. Rep. 305. However, in cases where the accused relies upon the affirmative testimony, a more specific charge has often been required to present the issue. McAfee v. State, 17 Texas Crim. App. 132; Granger v. State, 11 Texas Crim. App. 456; Ballentine v. State, 52 Texas Crim. Rep., 369; Ayers v. State, 21 Texas Crim. App., 399; Tittle v. State, 35 Texas Crim. Rep. 96.

The other matters adverted to in the motion for rehearing having been sufficiently discussed and properly disposed of in the original hearing, a further comment upon them is pretermitted.

The motion for rehearing is overruled.

*Overruled.*

[Application requesting to file second motion for rehearing denied October 31, 1923.—Reporter.]